[Cite as *State v. Burkhart*, 2016-Ohio-7534.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 16CA8 |
| CITY OF ATHENS, | : | |
| | : | |
| Plaintiff-Appellant, | : | |
| | : | DECISION AND JUDGMENT |
| vs. | : | ENTRY |
| | : | |
| SIDNEY BURKHART, | : | |
| | : | |
| Defendant-Appellee. | : | **Released: 10/24/16** |

_____

APPEARANCES:

Lisa A. Eliason, Athens City Law Director, and James K. Stanley, Athens City Prosecutor, Athens, Ohio, for Appellant.

R. David McGlade, Magaziner and McGlade, LLC, Zanesville, Ohio, for Appellee.

_____

McFarland, J.

{¶1} The State of Ohio/City of Athens appeals the trial court's decision granting a motion to suppress filed by Appellee, Sidney Burkhart. On appeal, Appellant contends that the trial court erred in granting Appellee's motion to suppress, which was based upon an allegation that the arresting officer lacked reasonable, articulable suspicion to expand the scope of a traffic stop from a speeding investigation into an operating a vehicle under the influence of alcohol investigation. Having found merit to the sole

assignment of error raised by Appellant, the judgment of the trial court granting Appellee's motion to suppress is reversed and this matter is remanded to the trial court for further proceedings.

## FACTS

{¶2} At approximately 1:46 a.m. on February 26, 2016, Sergeant Christopher Davis of the Ohio State Highway Patrol stopped Appellee, Sidney Burkhart, for a speeding violation. Appellee, age nineteen at the time, was traveling forty-three miles per hour in a twenty-five mile per hour zone. Appellee had a passenger in her vehicle at the time of the stop. Upon approaching the vehicle, Sergeant Davis noted a strong odor of alcoholic beverages coming from the vehicle and observed Appellee to have red, bloodshot and glassy eyes.[1] A review of the dash cam video of the traffic stop indicates that Sergeant Davis, before he even returned to his vehicle with Appellee's information, asked Appellee to exit the vehicle. On the dash cam video, Davis can be heard telling Appellee the purpose of asking her to exit the vehicle is so he can check her eyes. Although Davis made

---

[1] Appellee disputes that Sergeant Davis noted her eyes to be red, bloodshot and glassy while she was still inside the vehicle and instead argues that the narrative report prepared by Sergeant Davis suggests he did not make that observation until after she exited the vehicle. However, the State objected to the admission of the narrative report during the suppression hearing and it was therefore not admitted or made a part of the record. Thus, it is not presently before us on appeal. Further, the transcript from the suppression hearing indicates Sergeant Davis testified that he observed Appellee's eyes upon the initial approach to Appellee's vehicle, as per his normal practice and procedure.

another statement after that, the audio recording is indecipherable due to intervening dispatch reports coming through on the cruiser radio.

{¶3} Once Appellee exited the vehicle, Sergeant Davis observed a strong odor of alcoholic beverages on Appellee's breath. Davis then administered field sobriety tests to Appellee, the results of which are not challenged on appeal. Ultimately, Appellee was arrested and charged with OVI, in violation of R.C. 4511.19(A)(1)(a) and (A)(1)(d), as well as a speeding violation. The citation issued to Appellee indicates a BAC result of .160.

{¶4} Appellee filed a motion to suppress in the trial court, alleging that the evidence against her should be suppressed because Sergeant Davis did not possess a reasonable, articulable suspicion of driving under the influence of alcohol, which she claimed was required for him to order her out of the vehicle for field sobriety tests. A suppression hearing was held on April 21, 2016. The State's witness was Sergeant Christopher Davis, the trooper who stopped and arrested Appellee on the night in question. Sergeant Davis testified that he stopped Appellee for speeding and that he did not observe any other erratic driving or behavior on Appellee's part. He further testified that because Appellee had a passenger in the car and because he detected an odor of alcohol coming from the vehicle, along with

observing Appellee's eyes to be red, bloodshot and glassy, he asked

Appellee to exit the vehicle so he could check her eyes and to perform field

sobriety tests. Davis further testified that he detected a strong odor of

alcohol on Appellee's breath once she exited the vehicle. Davis testified that

this factor, coupled with his initial examination of her eyes as well as his

training and experience, led him to conduct field sobriety testing. Although

the trial court did not review the dash cam video during the hearing, it was

admitted into evidence for the court's review prior to issuing a decision.

{¶5} The trial court subsequently issued a decision granting

Appellee's motion to suppress. It is from this decision that the State now

brings their timely appeal, setting forth one assignment of error for our

review.

## ASSIGNMENT OF ERROR

"I.   THE TRIAL COURT ERRED IN GRANTING THE
       DEFENDANT'S MOTION TO SUPPRESS BASED UPON AN
       ALLEGATION THAT THE ARRESTING OFFICER LACKED
       REASONABLE, ARTICULABLE SUSPICION TO EXPAND THE
       SCOPE OF THE TRAFFIC STOP FROM A SPEEDING
       INVESTIGATION INTO AN OPERATING A VEHICLE UNDER
       THE INFLUENCE OF ALCOHOL INVESTIGATION."

## LEGAL ANALYSIS

{¶6} In its sole assignment of error, Appellant, State of Ohio/City of

Athens, contends that the trial court erred to its prejudice when it granted

Appellee's motion to suppress. Appellant contends that the issue that must be addressed by this Court is whether the trial court erred in granting the motion to suppress based upon an allegation that the arresting officer lacked reasonable, articulable suspicion to expand the scope of the traffic stop from a speeding investigation into an operating a vehicle under the influence of alcohol investigation. We initially note that R.C. 2945.67 (Appeal by State) provides in § (A) that "[a] prosecuting attorney * * * may appeal as a matter of right any decision of a trial court in a criminal case, * * * which decision grants * * * a motion to suppress evidence."

{¶7} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Burnside*, 100 Ohio St.3d 152, 2003–Ohio–5372, 797 N.E.2d 71, ¶ 8; citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id*., citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the

applicable legal standard." *Burnside* at ¶ 8; citing *State v. McNamara*, 124

Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997). *See also State v. Roberts*,

110 Ohio St.3d 71, 2006–Ohio–3665, 850 N.E.2d 1168, ¶ 100.  The Fourth

Amendment to the United States Constitution, as applied to the states

through the Fourteenth Amendment, provides: "The right of the people to be

secure in their persons, houses, papers, and effects, against unreasonable

searches and seizures, shall not be violated, and no Warrants shall issue, but

upon probable cause, supported by Oath or affirmation, and particularly

describing the place to be searched, and the persons or things to be seized."

Section 14, Article I of the Ohio Constitution also prohibits unreasonable

searches and seizures.  Because Section 14, Article I and the Fourth

Amendment contain virtually identical language, the Supreme Court of Ohio

has interpreted the two provisions as affording the same protection. *State v.*

*Orr*, 91 Ohio St.3d 389, 391, 2001–Ohio–50, 745 N.E.2d 1036.

{¶8} Searches and seizures conducted without a prior finding of

probable cause by a judge or magistrate are per se unreasonable under the

Fourth Amendment, subject to only a few specifically established and well-

delineated exceptions. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507

(1967).  Once the defendant demonstrates that he was subjected to a

warrantless search or seizure, the burden shifts to the State to establish that

the warrantless search or seizure was constitutionally permissible. *See Maumee v. Weisner*, 87 Ohio St.3d 295, 297, 1999–Ohio–68, 720 N.E.2d 507. In this case, law enforcement did not obtain a warrant for any purpose prior to arresting Burkhart.

{¶9} "An officer's temporary detention of an individual during a traffic stop constitutes a seizure of a person within the meaning of the Fourth Amendment * * *." *State v. Lewis*, 4th Dist. Scioto No. 08CA3226, 2008–Ohio–6691, ¶ 14. "To be constitutionally valid, the detention must be reasonable under the circumstances." *Id.* "A traffic stop is reasonable when an officer possesses probable cause to believe that an individual has committed a traffic violation." *State v. Taylor*, 4th Dist. Washington No. 07CA11, 2008–Ohio–482, ¶ 15; citing *Whren v. United States*, 517 U.S. 806, 809, 116 S.Ct. 1769 (1996). " 'Probable cause' is defined as a reasonable ground of suspicion that is supported by facts and circumstances, which are sufficiently strong to warrant a prudent person in believing that an accused person had committed or was committing an offense." *State v. Jones*, 4th Dist. Washington No. 03CA61, 2004–Ohio–7280, ¶ 40; citing *State v. Ratcliff*, 95 Ohio App.3d 199, 205, 642 N.E.2d 31 (1994).

{¶10} Although probable cause "is certainly a complete justification for a traffic stop," it is not required. *State v. Mays*, 119 Ohio St.3d 406,

2008–Ohio–4539, 894 N.E.2d 1204, ¶ 23.  So long as "an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid." *Id.* at ¶ 8.  Reasonable and articulable suspicion is obviously a lower standard than probable cause. *Id.* at ¶ 23.  To conduct an investigatory stop, the officer must be able to point to specific and articulable facts which, taken together with rational inferences derived from those facts, give rise to a reasonable suspicion that the individual is engaged or about to be engaged in criminal activity. *State v. Williams*, 51 Ohio St.3d 58, 60–61, 554 N.E.2d 108 (1990) (per curiam). "The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044, paragraph one of the syllabus (1980).

{¶11} Once a driver has been lawfully stopped, an officer may order the driver to get out of the vehicle without any additional justification. *State v. Kilbarger*, 4th Dist. Hocking No. 11CA23, 2012–Ohio–1521, ¶ 16; citing *State v. Huffman*, 2nd Dist. Clark No. 2010–CA–104, 2011–Ohio–4668, ¶ 8. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111, fn. 6, 98 S.Ct. 330 (1977); *See also State v. Alexander-Lindsey*, 4th Dist. Lawrence No. 15CA11, 2016–Ohio–3033, ¶14 ("Officers can order a driver and a passenger to exit the

vehicle, even absent any additional suspicion of a criminal violation.")
(internal citations omitted). However, "the officer must 'carefully tailor' the
scope of the stop 'to its underlying justification,' and the stop must 'last no
longer than is necessary to effectuate the purpose of the stop.' " *State v.
Marcinko*, 4th Dist. Washington No. 06CA51, 2007-Ohio-1166, ¶ 26;
quoting *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319 (1983). "An
officer may lawfully expand the scope of the stop and may lawfully continue
to detain the individual if the officer discovers further facts which give rise
to a reasonable suspicion that additional criminal activity is afoot." *Id.*

{¶12} Thus, "[a]n officer conducting a routine traffic stop may * * *
expand the stop's scope in order to investigate whether the individual
stopped is under the influence of alcohol and may continue to detain the
individual to confirm or dispel his suspicions if the officer observes
additional facts during the routine stop which reasonably lead him to suspect
that the individual may be under the influence." *Id.* at ¶ 28. This expanded
stop might include field sobriety tests.

{¶13} " 'In determining whether a detention is reasonable, the court
must look at the totality of the circumstances.' " *State v. Alexander-Lindsey,
supra,* at ¶ 33; quoting *State v. Debrossard*, 4th Dist. Ross No. 13CA3395,
2015–Ohio–1054, at ¶ 21; in turn quoting *State v. Matteucci*, 11th Dist. Lake

No. 2001–L–205, 2003–Ohio–702, ¶ 30.  The totality of the circumstances approach "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' " *State v. Ulmer*, 4th Dist. Scioto No. 09CA3283, 2010–Ohio–695, ¶ 23; *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744 (2014).  Thus, when an appellate court reviews a police officer's reasonable suspicion determination, "the court must give 'due weight' to factual inferences drawn by resident judges and local law enforcement officers." *Ulmer* at ¶ 23; *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657 (1996).

{¶14} Here, Appellee filed a motion to suppress in the trial court, contending that all of the evidence against her should be suppressed because the officer "lacked the necessary reasonable, articulable suspicion that [she] was operating a motor vehicle while under the influence or while impaired prior to ordering [her] out of her vehicle for Field Sobriety Testing."  In support of her motion, at the trial court level and on appeal, Appellee relies upon *State v. Swartz*, 2nd Dist. Miami No. 2008 CA 31, 2009–Ohio–902, to argue that "[a] police officer is not warranted to remove an individual from their automobile to conduct field sobriety testing unless the officer has reasonable articulable suspicion to believe that said person was operating a

vehicle under the influence of drugs and/or alcohol." Appellee further urged

the trial court, and now urges this Court, to consider the factors enumerated

in *State v. Evans*, 127 Ohio App.3d 56, 711 N.E.2d 761 (11th Dist.1998) in

determining whether Sergeant Davis had the requisite reasonable, articulable

suspicion to order Appellee to perform field sobriety testing. It appears the

trial court did, in fact, rely on these sources in reaching its decision.

{¶15} In *State v. Swartz*, the appellant's vehicle was stopped after an

officer observed the appellant make a left turn without signaling. Upon

approaching the appellant, the officer noticed his eyes were glassy and

bloodshot and the officer was able to smell the odor of alcohol on the

appellant's breath, despite having other passengers in the vehicle. *State v.

Swartz, supra,* at ¶ 2. The *Swartz* court stated that the issue to be decided

was whether the officer had a reasonable, articulable suspicion to remove the

appellant from his vehicle in order to conduct field sobriety tests. *Id.* at ¶ 9.

The court also noted that these decisions are "very fact-intensive." *Id.* The

*Swartz* court went on to state, as Appellee herein argues, that "[i]n order to

warrant removing a person from his vehicle to conduct field sobriety tests, a

police officer must have reasonable articulable suspicion to believe that the

person was driving under the influence of drugs or alcohol." (internal

citations omitted). Finding that the only indicia of intoxication present were

the appellant's glassy, bloodshot eyes and the smell of alcohol, without any testimony regarding the intensity or strength of the odor emanating from the appellant, or that the odor persisted once the appellant was removed from the vehicle where the passengers remained, the *Swartz* court upheld the trial court's grant of the appellant's motion to suppress.

{¶16} We initially note that contrary to the holding in *Swartz*, this Court and other courts have held that "[o]fficers can order a driver and a passenger to exit the vehicle, even absent any additional suspicion of a criminal violation." *State v. Alexander-Lindsey, supra,* at ¶ 14; *State v. Kilbarger, supra,* at ¶ 16 ("Once a driver has been lawfully stopped, an officer may order the driver to get out of the vehicle without any additional justification.")  Thus, we reject Appellee's argument that Sergeant Davis was required to have a reasonable, articulable suspicion of criminal activity to order her to exit the vehicle.  Further, to the extent the trial court's decision states that Sergeant Davis was required to have a reasonable, articulable suspicion of criminal activity at the time he ordered Appellee to exit the vehicle, the trial court has applied an incorrect legal standard.  Instead, in our view, this case involves two questions: 1) whether Sergeant Davis had the authority to order Appellant to exit her vehicle after he lawfully stopped her for speeding; and 2) whether Sergeant Davis had a

reasonable, articulable suspicion that Appellee was under the influence of alcohol, which would justify expanding the scope of the stop after he ordered Appellee to exit the vehicle, in order to perform field sobriety testing.

{¶17} Subsequent to the issuance of the *Swartz* decision, *State v. Santiago*, 195 Ohio App.3d 649, 2011–Ohio–5292, 961 N.E.2d 264 (2nd Dist.2011) was decided, also a Second District case.  Of importance, the *Santiago* court noted the holding in *Swartz*, but nevertheless also noted that the Second District itself has held that a strong odor of alcohol, without more, can be a sufficient basis to provide reasonable suspicion of driving under the influence. *Id.* at ¶ 12.  For instance, the *Santiago* court reasoned as follows during its discussion of the *Swartz* holding:

> "This court has held, however, that a strong odor of an
> alcoholic beverage, without other significant indicia of
> intoxication, may be sufficient to provide an officer with
> reasonable suspicion of driving under the influence. *State v.
> Marshall* (Dec. 28, 2001), Clark App. No. 2001CA35, 2001
> WL 1658096 (holding that a strong odor of alcohol, coupled
> with high speed and red eyes, created a reasonable suspicion
> justifying field sobriety tests); *State v. Schott* (May 16, 1997),

Darke App. No. 1415, 1997 WL 254141 **268 (holding that a

strong odor of alcohol alone can create a reasonable, articulable

suspicion of intoxication adequate to require an individual to

submit to field sobriety tests)." *Id.*

Ultimately, the *Santiago* court found the facts before them distinguishable

from those in *Swartz*, particularly with regard to the fact that there was

testimony that the odor of alcohol on Santiago was strong, and also could be

smelled on Santiago's breath once he stepped out of the car. *Id.* at ¶ 14.

{¶18} We find the facts of the case presently before us more akin to

the facts in *Santiago* than *Swartz*. Here, Appellee was initially stopped

because she was driving forty-three miles per hour in a twenty-five mile per

hour zone. Appellee does not challenge the basis or validity of her initial

stop and thus, we need not address it. Upon stopping Appellee, Sergeant

Davis testified that he approached the vehicle, and per his normal procedure

looked at Appellee's eyes. He testified that he found Appellee's eyes to be

red, bloodshot and glassy, and that he smelled a strong odor of alcohol

coming from the vehicle. Because he could not discern where the odor was

coming from and because he noted Appellee's eyes to be red, bloodshot and

glassy, he ordered Appellee out of the vehicle "to check her eyes," which he

can be heard stating on the dash cam video. Upon interacting with Appellee

once she exited the vehicle, Davis noted a strong odor of alcohol coming from Appellee's breath.

{¶19} With regard to his decision to remove Appellee from the vehicle, and taking into consideration there was a passenger in the vehicle, Sergeant Davis testified that his full intent in removing Appellee was to determine if he had an impaired driver. Sergeant Davis further testified as follows:

> "I'm definitely, for liability purpose, for safety purpose, I'm not
> letting them drive down the road when I, based on my
> experience, have seen people that look just like this, that smell
> like this. I'm not letting them drive down the road and hit
> somebody head on and kill them."

As Sergeant Davis essentially testified, law enforcement officers do in fact have a duty to dispel their concerns regarding impaired drivers before concluding a traffic stop. *Village of Kirtland Hills v. Kunka*, 11th Dist. Lake No. 2012–L–095, 2013–Ohio–738, ¶ 26. ("Where the officer possesses a reasonable suspicion that a suspect is guilty of an OVI offense, he has the authority, if not the duty, to expand the scope of the stop to conduct further investigation regardless of whether circumstances exist, as they inevitably will, that support the conclusion that the suspect is innocent. The suspect's

ultimate guilt or innocence is not the issue in an investigatory stop, but, rather, whether reasonable justification exists for continuing the search/seizure.")

{¶20} We conclude, based upon these facts, as well as our prior reasoning in *Kilbarger* and *Alexander-Lindsey*, that Sergeant Davis had the authority to order Appellee out of the vehicle, even without a reasonable, articulable suspicion at that particular time that she was driving under the influence of alcohol. Further, based upon the reasoning of *Santiago*, *Marshall* and *Schott, supra,* we conclude that Sergeant Davis had a reasonable, articulable suspicion Appellee was driving under the influence of alcohol, which justified expanding the scope of the traffic stop to perform field sobriety testing. The factors we find present in the record before us are Appellee's red, bloodshot, glassy eyes, coupled with the strong odor of an alcoholic beverage coming from within the vehicle, which strong odor persisted from Appellee's breath once she exited the vehicle.

{¶21} We next consider the applicability of *State v. Evans, supra,* to our analysis, as urged by Appellee, and as cited by both parties herein and relied upon by the trial court in reaching its decision. We initially note that *State v. Evans* did not involve the question of whether an officer could order a driver of the vehicle to perform field sobriety tests, but rather it involved

an analysis of the factors a court should consider when reviewing the totality

of the circumstances surrounding an officer's decision to administer field

sobriety tests. *Evans* at \*63; *State v. Coates*, 4th Dist. Athens No. 01CA21,

2002 WL 851765, \*4.  In *Coates*, this Court noted the reasoning in *Evans*,

and stated as follows:

> "In *State v. Evans* (1998), 127 Ohio App.3d 56, 711 N.E.2d
>
> 761, fn. 2, the Twelfth District Court of Appeals noted several
>
> factors a court should consider when reviewing the totality of
>
> the circumstances surrounding an officer's decision to
>
> administer field-sobriety tests.  The Twelfth Appellate District
>
> noted the following factors, with no single one being
>
> determinative of this issue:
>
> (1) the time and day of the stop (Friday or Saturday night as
>
> opposed to, e.g., Tuesday morning); (2) the location of the stop
>
> (whether near establishments selling alcohol); (3) any indicia of
>
> erratic driving before the stop that may indicate a lack of
>
> coordination (speeding, weaving, unusual braking, etc.); (4)
>
> whether there is a cognizable report that the driver may be
>
> intoxicated; (5) the condition of the suspect's eyes (bloodshot,
>
> glassy, glazed, etc.); (6) impairments of the suspect's ability to

speak (slurred speech, overly deliberate speech, etc.); (7) the

odor of alcohol coming from the interior of the car, or, more

significantly, on the suspect's person or breath; (8) the intensity

of that odor, as described by the officer ("very strong,"

"strong," "moderate," "slight," etc.); (9) the suspect's demeanor

(belligerent, uncooperative, etc.); (10) any actions by the

suspect after the stop that might indicate a lack of coordination

(dropping keys, falling over, fumbling for a wallet, etc.); and

(11) the suspect's admission of alcohol consumption, the

number of drinks had, and the amount of time in which they

were consumed, if given." *Coates* at *4-5.

Thus, although *Evans* is non-binding authority, this Court has, in the past,

relied upon its reasoning.

{¶22} Turning to the factors set forth in *Evans*, we note that Appellee

was stopped at 1:46 a.m. on a late Thursday night/early Friday morning, on

Stimson Avenue in Athens, Ohio. As far as indicia of erratic driving,

Sergeant Davis did not testify to erratic driving, other than the high rate of

speed in which Appellee was driving for the location in question. Appellee

was going forty-three miles per hour in a twenty-five mile per hour zone.

While there was no other cognizable report made regarding Appellee's

driving, Sergeant Davis noted upon approaching Appellee that her eyes were red, bloodshot and glassy and that a strong smell of alcohol was coming from the vehicle, where there was also a passenger in addition to Appellee. Sergeant Davis further testified that he identified a strong odor of alcohol on Appellee's breath once she exited the vehicle. There is no indication that Appellee's demeanor or actions displayed a lack of cooperation or coordination after she was stopped, nor did Appellee admit to having consumed alcohol before field sobriety tests were administered.

{¶23} Considering the above factors as part of a totality of the circumstances analysis, we find several factors present which, taken together with Sergeant Davis's experience and training, would have provided him with reasonable, articulable suspicion that Appellee was driving under the influence of alcohol so as to justify expanding the scope of the traffic stop to perform field sobriety testing. In particular, the timing of the stop, the rate of Appellee's speed, which was nearly twenty miles per hour over the legal limit, the condition of Appellee's eyes, and the strong odor of alcohol emanating from the vehicle and also from Appellee's breath, coupled with Sergeant Davis's experience and training, all established a reasonable articulable suspicion of driving under the influence of alcohol. We conclude

this analysis of these factors is also in line with the reasoning of *Santiago*, as discussed above.

**{¶24}** Further, we note that the list of factors enumerated in *Evans* has recently come under some criticism at the Municipal Court level.  In *City of Cleveland v. Machnics*, 984 N.E.2d 1129 (2012), a published opinion by the Cleveland Municipal Court, the court noted that since *Evans* was decided, the legal standard for intoxication has been reduced. *Id.* at *1131.  The *Machnics* court reasoned as follows, with regard to the continued viability of the factors enumerated in *Evans*:

> "In 2003, the Ohio General Assembly reduced the presumption
> of intoxication by two-hundredths of one percent by weight per
> unit volume of alcohol in the person's whole blood.  Given this
> lower standard, a number of factors listed in *Evans* will not be
> exhibited by an impaired driver at the lowest prohibited alcohol
> consumption level.  *Evans* was also decided prior to the
> reduction in the presumptive level of alcohol impairment.
> Consequently, it is unlikely that a suspect's speech, behavior or
> coordination will be noticeably impaired.  A prohibition to
> further investigate because only four factors of impairment are
> shown: bloodshot and glassy eyes, smell of alcohol, and time of

day after 2:00 a.m. will probably preclude or hinder

enforcement of driving while impaired at the reduced level of

alcohol." *Id.* at *1132.

{¶25} We find the reasoning in *Machnics* provides useful guidance on

this particular issue and apply it accordingly. Here, Sergeant Davis testified

that he very seldom encounters drivers exhibiting overwhelming signs of

intoxication, such as "stumbling and falling, falling down." He also testified

that most of the drivers he has eventually arrested for OVI present similarly

to Appellee. Further, we find the reasoning in *Machnics* to be especially

applicable to the present case, as Appellee was under the age of twenty-one.

At the time Appellant was arrested for OVI, she was only nineteen years old,

well under the legal drinking age of twenty-one. The reasoning in *Machnics*

discusses the presumption of intoxication and signs of impairment at the

reduced legal limit of .08, as contained in R.C. 4511.19(A)(1)(d). However

Appellee, being under age, was subject to the even lower limit of .02,

contained in R.C. 4511.19(B)(3).[2]

{¶26} Based on the totality of the circumstances (i.e., Appellee's high

rate of speed, the time of her stop, the condition of her eyes, and the strong

smell of alcohol emanating from the vehicle as well as Appellee's breath),

---

[2] Sergeant Davis was cognizant of this fact at the time of the stop and can be heard on the dash cam video informing Appellee that the limit of .08 did not apply to her, but rather a limit of .02 applied as she was underage.

we find that Sergeant Davis had sufficient information to have a reasonable,

articulable suspicion that Appellee was driving under the influence of

alcohol, and thus to expand the scope of the traffic stop to order her to

perform field sobriety testing.  As such, we conclude that the trial court

reached an incorrect legal conclusion in analyzing the facts and we therefore

sustain Appellant's sole assignment of error.  Accordingly, the judgment of

the trial court is reversed and this matter is remanded for further

proceedings.

**JUDGMENT REVERSED
AND REMANDED FOR
FURTHER PROCEEDINGS
CONSISTENT WITH THIS
OPINION.**

Hoover, J., dissenting:

{¶27} I respectfully dissent from the lead opinion. I would affirm the trial court's judgment granting Burkhart's Motion to Suppress.

{¶28} Contrary to the assertion in the lead opinion, the trial court did not apply an incorrect legal standard in its analysis. The trial court's decision did not state, as alluded to in paragraph 16 of the lead opinion, "that Sergeant Davis was required to have a reasonable, articulable suspicion of criminal activity at the time he ordered Appellee to exit the vehicle * * *." Instead, the trial court stated in its findings that it "considered the eleven factors enumerated in *State v. Evans*, 127 Ohio App.3d 45 [sic] (11[th] Dist., 1998)" to find that "there were not sufficient facts to support expanding the scope of the traffic stop to an OVI investigation." As the lead opinion recognizes, this Court has utilized the *Evans* factors before. In *State v. Coates*, 4th Dist. Athens No. 01CA21, 2002 WL 851765, **4-5 (Feb. 25, 2002), we stated the following:

> Before an officer may order an individual to perform field-
> sobriety tests, he or she must have a reasonable, articulable
> suspicion that the individual was operating a motor vehicle
> while under the influence of alcohol. See *Columbus v.*
> *Anderson* (1991), 74 Ohio App.3d 768, 600 N.E.2d 712, citing

*State v. Bobo* (1988), 37 Ohio App.3d 177, 524 N.E.2d 489.

When reviewing whether a police officer had a reasonable, articulable suspicion to order an individual to perform field-sobriety tests, the officer's decision "must be viewed in light of the totality of the surrounding circumstances." *State v. Bobo,* 37 Ohio App.3d 177, 524 N.E.2d 489, paragraph one of the syllabus. In *State v. Evans* (1998), 127 Ohio App.3d 56, 711 N.E.2d 761, fn. 2, the Twelfth District Court of Appeals noted several factors a court should consider when reviewing the totality of the circumstances surrounding an officer's decision to administer field-sobriety tests. The Twelfth Appellate District noted the following factors, with no single one being determinative of this issue:

> (1) the time and day of the stop (Friday or Saturday night as opposed to, *e.g.,* Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving,

unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer ("very strong," "strong," "moderate," "slight," etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given.

*Id.*

{¶29} More recently, this Court set forth the standards to apply when

determining whether a traffic stop may be expanded in order to investigate

whether an individual is under the influence of alcohol.

> Once an officer has lawfully stopped a vehicle, the officer must
> "carefully tailor" the scope of the stop "to its underlying
> justification," and the stop must "last no longer than is
> necessary to effectuate the purpose of the stop." *Florida v.*
> *Royer* (1983), 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d
> 229; see, also, *State v. Gonyou* (1995), 108 Ohio App.3d 369,
> 372, 670 N.E.2d 1040, 1041; *State v. Birchfield* (Aug. 26,
> 1997), Ross App. No. 97 Ca 2281, unreported. An officer may
> lawfully expand the scope of the stop and may lawfully
> continue to detain the individual if the officer discovers further
> facts which give rise to a reasonable suspicion that additional
> criminal activity is afoot. See, *e.g., Terry, supra; State v.*
> *Robinette* (1997), 80 Ohio St.3d 234, 240, 685 N.E.2d 762.

> Thus, if a law enforcement officer, during a valid traffic stop,
> ascertains "reasonably articulable facts giving rise to a
> suspicion of criminal activity, the officer may then further
> detain and implement a more in-depth investigation of the

individual." *Id.,* 80 Ohio St.3d at 241, 685 N.E.2d at 768. Consequently, when a law enforcement officer stops an individual for a minor traffic offense, generally the officer may not expand the scope of the stop unless the officer observes additional facts giving rise to a reasonable suspicion of other criminal activity.

An officer conducting a routine traffic stop may, therefore, expand the stop's scope in order to investigate whether the individual stopped is under the influence of alcohol and may continue to detain the individual to confirm or dispel his suspicions if the officer observes additional facts during the routine stop which reasonably lead him to suspect that the individual may be under the influence. See *State v. Angel* (Sept. 21, 2001), Miami App. No.2001-CA-11, unreported; *State v. Strausbaugh* (Dec. 3, 1999), Montgomery App. No. 17629, unreported; *State v. Strassman* (Nov. 20, 1995), Athens App. No. 98 CA 10, unreported. * * *

*State v. Hehr*, 4th Dist. Washington No. 04CA10, 2005-Ohio-353, ¶¶ 16-18.

{¶30} In the case sub judice, the following findings of fact were supported by competent, credible evidence; and therefore, I defer to the findings as determined by the trial court:

1. Burkhart was stopped by Sergeant Davis for speeding.

2. No other traffic violations were observed.

3. Sergeant Davis observed a strong odor of an alcoholic beverage emanating from the vehicle while speaking with Burkhart.

4. There was a passenger in the vehicle.

5. Burkhart denied consuming alcohol.

6. Sergeant Davis noticed that her eyes were red, bloodshot, and glossy.

7. Sergeant Davis testified that Burkhart's speech, movements, and comprehension were within normal ranges and that he did not consider them to be indicative of impairment.

8. Sergeant Davis testified that he instructed Ms. Burkhart to exit her vehicle to do field sobriety testing based on the strong odor of alcoholic beverage, red/bloodshot, glassy eyes, and the speed violation.

{¶31} Next, analyzing the facts of the case under the standards set forth in *Hehr* and *Coates* (which utilized the factors in *Evans*), I would find that the trial court reached the correct conclusion. According to *Hehr*,

Sergeant Davis would be permitted to expand the stop's scope in order to investigate whether Burkhart was under the influence of alcohol and would be permitted to continue to detain Burkhart to confirm or dispel his suspicions *if he observed additional facts during the routine stop* which reasonably led him to suspect that Burkhart may be under the influence.

{¶32} Sergeant Davis conceded that he took this "beyond a speeding ticket when he asked her to get out of the car." (Tr. Page 47) Therefore, when the trial court focused its attention on what comprised Sergeant Davis's reasonable articulable suspicion at the time that he was having Burkhart exit the vehicle *to perform field sobriety testing*, the trial court did not engage in a faulty analysis as the lead opinion espouses. In this case, it seems that the first event of Sergeant Davis asking Burkhart to exit the vehicle coincided with the second event of Sergeant Davis deciding to expand the scope of the traffic stop to perform field sobriety tests.

{¶33} Prior to asking Burkhart to exit the vehicle, there was sparse information to justify an expansion of the scope of the traffic stop. The trial court found that Sergeant Davis instructed Burkhart to exit her vehicle to do field sobriety testing based on the strong odor of alcoholic beverage, red/bloodshot, glassy eyes, and the speed violation. However, at this time, Sergeant Davis was not even sure if the odor was originating from Burkhart

or her passenger. It is also noteworthy that there was a discrepancy in Sergeant Davis's report of when he noticed that Burkhart's eyes were red. The report stated that Sergeant Davis did not notice Burkhart's red eyes until she stepped out of the car. (Tr. Page 36) On the other hand, during the suppression hearing, Sergeant Davis claimed that the report was wrong and that he noticed her red eyes before she got out of the car and not after. (Tr. Page 47) Lastly, a speed violation is not necessarily indicative of driving under the influence.

{¶34} Even after Burkhart exited the vehicle, she was cooperative in every way. (Tr. Pages 19-20) Sergeant Davis further testified that Burkhart did not fumble her purse (Tr. Page 20) nor did she have slurred speech (Tr. Page 20). Sergeant Davis testified that only after Burkhart was out of the vehicle could he "smell [an odor of an alcoholic beverage] coming from her breath." (Tr. Page 7)

{¶35} In addition, when applying the analysis of *Coates* which utilizes the eleven factors in *Evans*, I would find "in light of the totality of the surrounding circumstances" that Sergeant Davis did not have a reasonable, articulable suspicion to expand the scope of the traffic stop and to order Burkhart to perform field-sobriety tests.

{¶36} The traffic stop was at approximately 1:45 a.m. on an early Friday morning where Stimson Avenue joins the highway. Other than speeding, there was no "indicia of erratic driving before the stop" that would indicate a lack of coordination (speeding, weaving, unusual braking, etc.); no cognizable report that the driver may be intoxicated was made; and there was a discrepancy regarding the timing of when Sergeant Davis actually noticed the condition of Burkhart's eyes as red, bloodshot, and glassy. No impairments of Burkhart's ability to speak (slurred speech, overly deliberate speech, etc.) were observed. At the time of the initial traffic stop, although Sergeant Davis testified that he noticed the "strong odor of an alcoholic beverage, " (Tr. Page 5) he was not sure if the odor of alcohol coming from the interior of the car was from Burkhart or her passenger. He just knew that the odor was emanating out of the vehicle at the time. (Tr. Page 7) Sergeant Davis testified that Burkhart's demeanor was cooperative. Burkhart further did not exhibit any indicia of a lack of coordination. Sergeant Davis testified that Burkhart did not fumble her purse or slur her speech. (Tr. Page 20) Lastly, Burkhart did not admit to consuming alcohol.

{¶37} Under similar circumstances, other Ohio appellate courts have declined to find that reasonable, articulable suspicion justified expanding the scope of the traffic stop. *See State v. Reed*, 7th Dist. Belmont No. 05BE31,

2006-Ohio-7075 (non-moving violation coupled with a slight smell of alcohol, red glassy eyes, and the admission of drinking two beers did not provide the officer with any evidence that defendant was impaired); *State v. Kennard*, 6th Dist. Huron, 2001 WL 605106 (June 1, 2001) (license plate violation, weaving within lane, odor of alcohol, non-slurred speech, and admission of drinking "one beer" does not constitute reasonable articulable suspicion of driving under the influence); *State v. Swartz*, 2d Dist. Miami No. 2008CA31, 2009-Ohio-902 (left turn without signaling, odor of alcohol on driver's breath, and glassy/bloodshot eyes does not constitute reasonable and articulable suspicion of driving under the influence); *State v. Brickman*, 11th Dist.  Portage No. 2000-P-0058, 2001 WL 635954 (June 8, 2001) (speed violation, weaving within lane, mild odor of alcohol, red/glassy eyes and admission of drinking "a beer" does not constitute reasonable articulable suspicion of driving under the influence); *State v. Spillers*, 2d Dist. Darke No. 1504, 2000 WL 299550 (Mar. 24, 2000) (reasonable suspicion does not exist where an officer is relying on de minimis traffic violation, a slight odor of alcohol, and the admission of having consumed "a couple" of beers); *State v. Derov*, 7th Dist. Mahoning No. 07MA71, 2009-Ohio-5513 (expired license plate tags, red glassy eyes, strong smell of alcohol, no trouble getting

out of vehicle does not constitute reasonable suspicion necessary to justify conducting field sobriety tests).

{¶38} When analyzing the facts of this case under the standards set forth by this Court in *Hehr* and *Coates*, I would find that the trial court did not err in its judgment granting Burkhart's motion to suppress. I am not being unmindful of Sergeant Davis's difficult decisions he must make in order to protect the public safety. However, in these circumstances, when the driver (1) is cooperative; (2) has not exhibited any indicia of impaired or erratic driving (other than speeding); (3) has not demonstrated any impairments to speech; and (4) has no lack of coordination, to reverse the trial court's judgment granting the motion to suppress may create " 'the unfortunate impression that the Court is more interested in upholding the power of the State than in vindicating individual rights.' " *Pennsylvania v. Mimms,* 434 U.S. 106, 124*,* 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (Stevens, J., dissenting), quoting *Idaho Dept. of Employment v. Smith*, 434 U.S. 100, 105, 98 S.Ct. 327, 54 L.Ed.2d 324 (1977) (Stevens, J., dissenting).

{¶39} Therefore, I respectfully dissent.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE REVERSED AND CAUSE REMANDED FOR FURTHER PROCEEDINGS and that Appellant recover of Appellee any costs herein.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.:    Concurs in Judgment and Opinion.
Hoover, J.:  Dissents with Dissenting Opinion.

For the Court,

BY:   _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**