[Cite as *State v. Reynolds*, 2023-Ohio-2030.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, CITY OF WICKLIFFE, | **CASE NOS. 2022-L-092 2022-L-095** |
| Plaintiff-Appellee, | Criminal Appeals from the Willoughby Municipal Court |
| - vs - | |
| KEITH B. REYNOLDS, | Trial Court Nos. 2022 TRC 00717 A 2022 TRC 00717 B |
| Defendant-Appellant. | |

**O P I N I O N**

Decided: June 20, 2023
Judgment: Affirmed

*Jeremy D. Iosue*, Director of Law, City of Wickliffe; *Sara J. Fagnilli*, Prosecutor, City of Wickliffe; and *David J. Hearty*, Stefanik & Iosue, 1109 Carnegie Avenue, Floor 2, Cleveland, OH 44115 (For Plaintiff-Appellee).

*Patrick J. Milligan*, 18615 Detroit Avenue, Suite 201, Lakewood, OH 44107 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} Appellant, Keith B. Reynolds ("Mr. Reynolds"), appeals from the judgment of the Willoughby Municipal Court that sentenced him after finding him guilty of driving under the influence of alcohol or drugs ("OVI") and failure to drive in marked lanes.

{¶2} Mr. Reynolds raises one assignment of error, contending the trial court committed reversible error when it denied his motion to suppress and found the officer had reasonable suspicion to administer field sobriety tests. More specifically, he contends (1) there were insufficient factors or indicia of impairment to justify requesting him to submit to field sobriety testing, (2) bloodshot, glassy eyes should no longer be

considered as a factor since it was removed from the NHTSA (National Highway Traffic Safety Administration) manual as an indicia of intoxication, and (3) the officer's claim that his speech was "slightly slurred" was contradicted by the booking video that was entered into evidence.

{¶3} After a careful review of the record and pertinent law, we find Mr. Reynolds' assignment of error to be without merit. Our review is limited since our record does not include a transcript of the motion to suppress hearing. Most fundamentally, there is no "magic" number of factors an officer is required to find to have the reasonable suspicion necessary to administer field sobriety tests. Rather, it is the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer that is determinative. In this case, the factors the trial court found significant were Mr. Reynolds' erratic driving, the length of time it took him to stop once the officer activated his lights, and the observations of the officer, who had over 16 years of experience dealing with intoxicated drivers. We are unable to review the remaining issues Mr. Reynolds raises since we do not have a transcript of the suppression hearing or evidence of the pertinent NHTSA manual provisions. Further, whether Mr. Reynolds' speech was clear at the time of the booking video is irrelevant to the officer's observation that his speech was "slightly slurred" at the time of the initial stop.

{¶4} The judgment of the Willoughby Municipal Court is affirmed.

### Substantive and Procedural History

{¶5} In February 2022, after a traffic stop and subsequent arrest, the Wickliffe Police Department issued Mr. Reynolds a citation, charging him with OVI, a first-degree misdemeanor, in violation of R.C. 4511.19(A)(1)(a), and failure to drive in marked lanes

2

or continuous lanes of traffic, a minor misdemeanor, in violation of Wickliffe Codified Ordinances 331.08.

{¶6} As relevant to this appeal, Mr. Reynolds filed a motion to suppress, contending the officer lacked a reasonable, articulable suspicion to extend the traffic stop to conduct field sobriety testing, the Horizontal Gaze Nystagmus ("HGN") test was not properly administered pursuant to the NHTSA manual, and the totality of the circumstances did not provide the officer with probable cause to arrest him for OVI.

{¶7} After holding a hearing, a magistrate denied Mr. Reynolds' motion to suppress. The magistrate made the following findings of fact:

{¶8} Officer Kuhse was on patrol when he received a dispatch for a call reporting an erratic driver on I-90 westbound. After the suspect, later identified as Mr. Reynolds, passed him, Officer Kuhse followed the vehicle. On his forward-facing dash camera, he captured Mr. Reynolds' vehicle driving across the dotted lines (without a turn signal) and drifting into the shoulder, nearly striking the guardrail. Other vehicles can be seen trying to avoid the suspect vehicle.

{¶9} Having observed numerous traffic violations and a near crash, Officer Kuhse activated his overhead lights. When the vehicle did not stop, he activated his siren. The conditions were snowy, and the shoulder was partially blocked by plowed snow. Mr. Reynolds drove for nearly one minute after the officer initiated the traffic stop.

{¶10} Officer Kuhse approached the vehicle and informed Mr. Reynolds of the reasons for the stop. He inquired whether Mr. Reynolds was okay. Mr. Reynolds denied consuming alcohol or suffering from any medical conditions. According to Officer Kuhse, Mr. Reynolds had "watery, bloodshot eyes and droopy eyelids, and his speech was slightly slurred."

3

Case Nos. 2022-L-092, 2022-L-095

{¶11} Officer Kuhse asked Mr. Reynolds to exit the vehicle and to perform field sobriety tests.  He first administered the HGN test.  Officer Kuhse testified he observed six possible clues, which is indicative of alcohol impairment.  Initially, Mr. Reynolds did not follow the officer's instructions to keep his head still and follow the stimulus only with his eyes.  The second test administered was the walk-and-turn test.  Mr. Reynolds lost his balance and stumbled while Officer Kuhse was reading instructions.  When told to begin when ready, Mr. Reynolds "oddly" told the officer to "go ahead and begin whenever you're ready, sir."  During the test, Mr. Reynolds put his foot down several times and had trouble counting, repeating multiple numbers twice.  He also used his vehicle to support himself.  He did not look at his raised foot during the test despite being instructed to do so.  Officer Kuhse terminated the test and determined the third field sobriety test was unnecessary.

{¶12} The officer placed Mr. Reynolds under arrest, and he transported Mr. Reynolds to the Wickliffe Police Department.  Mr. Reynolds submitted to a breath test, which was eventually marked as a refusal.  (Our review of the booking video from the police station reveals Mr. Reynolds voluntarily made several attempts to blow into the breathalyzer tube before the tests were marked as a refusal.)

{¶13} The magistrate further found that Officer Kuhse testified as to his training and experience in OVI investigations, which included dealing with "thousands of intoxicated citizens over the course of his 16 years in law enforcement."

{¶14} The magistrate made the following conclusions of law:

{¶15} The magistrate first noted that in *State v. Evans*, 127 Ohio App.3d 56, 711 N.E.2d 761 (11th Dist.1998), this court identified a nonexhaustive list of factors that courts typically consider when determining whether an officer's request to perform field sobriety

4

tests is supported by specific articulable facts. *See id.* at 63, fn. 2. The magistrate found the most significant factors were Mr. Reynolds' erratic driving, the officer's observation that Mr. Reynolds' eyes were watery and bloodshot with droopy eyelids, and Mr. Reynolds' failure to stop his vehicle until the officer activated both his lights and siren, driving approximately 55 seconds before stopping. These facts, coupled with the officer's experience, provided him with the reasonable suspicion necessary to administer field sobriety tests.

{¶16} The magistrate found that based on the testimony, the dash camera video, and the NHTSA guidelines for the HGN test, the City of Wickliffe (the "City") presented clear and convincing evidence that Officer Kuhse substantially complied with the NHTSA guidelines. Thus, the court found the administration of the HGN, the number of clues observed, whether Mr. Reynolds passed or failed, and Officer Kuhse's interpretation of the results were admissible at trial, as well as any other observations the officer may have made during the test.

{¶17} Lastly, the magistrate found Officer Kuhse had probable cause to arrest Mr. Reynolds based on the totality of the circumstances, including the *Evans* factors giving rise to a reasonable suspicion and Mr. Reynolds' performance on the field sobriety tests.

{¶18} The City and Mr. Reynolds agreed he would plead no contest to the OVI charge, and, in exchange, the City would motion the court to nolle the charge of failure to drive in marked lanes. Ultimately, the trial court found him guilty of both counts.

{¶19} The trial court sentenced Mr. Reynolds to 180 days in jail, with 175 days suspended, and 12 months of community control, including an alcohol/drug assessment and recommended treatment. The trial court fined Mr. Reynolds $475 and suspended

5

his license for one year with limited privileges for work, treatment, and reporting to the court.

{¶20} Mr. Reynolds raises one assignment of error on appeal:

{¶21} "The trial court committed reversible error when it found that Officer Kuhse had reasonable suspicion necessary to administer field sobriety tests."

## Standard of Review

{¶22} When reviewing a motion to suppress, this court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Russo*, 11th Dist. Lake No. 2019-L-080, 2020-Ohio-3236, ¶ 25. "'Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard.'" *Kirtland Hills v. Fuhrman*, 11th Dist. Lake No. 2007-L-151, 2008-Ohio-2123, ¶ 8, quoting *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994).

## Reasonable Suspicion

{¶23} In his sole assignment of error, Mr. Reynolds contends the trial court erred in finding that Officer Kuhse had a reasonable suspicion to justify administering field sobriety tests.

{¶24} The Fourth Amendment of the United States Constitution, as well as Article One, Section 14 of the Ohio Constitution, guarantee "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *State v. Wojtaszek*, 11th Dist. Lake No. 2002-L-016, 2003-Ohio-2105, ¶ 15. Pursuant to the Fourth and Fourteenth Amendments to the

Case Nos. 2022-L-092, 2022-L-095

United States Constitution, a police officer stopping an automobile and detaining its occupants constitutes a "seizure." *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), paragraph two of the syllabus.

{¶25} Where an officer has an articulable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid regardless of the officer's underlying subjective intent or motivation for stopping the vehicle in question. *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091 (1996).

{¶26} Any further detention, however, is a greater invasion into an individual's liberty interests. *Russo* at ¶ 29. Thus, an officer may not request a motorist to perform field sobriety tests unless the request is separately justified by a reasonable suspicion based upon articulable facts that the motorist is intoxicated. *Id.* A court will analyze the reasonableness of the request based upon the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold. *Id.*

{¶27} As noted above, in *Evans*, *supra*, we collected a non-inclusive list of factors from various cases that can be considered by a court to determine whether an officer had reasonable suspicion to administer field sobriety tests under the totality of the circumstances:

{¶28} "(1) the time and day of the stop (Friday or Saturday night as opposed to, *e.g.,* Tuesday morning); (2) the location of the stop (whether near establishments [are] selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's

7

eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer ("very strong," "strong," "moderate," "slight," etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given. All of these factors, together with the officer's previous experience in dealing with drunken drivers, may be taken into account by a reviewing court in determining whether the officer acted reasonably. No single factor is determinative." *Id.* at 63, fn. 2.

{¶29} Our review of Mr. Reynolds' assigned error is limited since he failed to file a transcript of the motion to suppress hearing. Pursuant to App.R. 9(B)(3), "[t]he appellant shall order the transcript in writing and shall file a copy of the transcript order with the clerk of the trial court." "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980). Thus, we will address Mr. Reynolds' arguments to the extent they do not rely on the transcript.

{¶30} Mr. Reynolds first contends that the trial court found an insufficient number of the *Evans* factors present to justify administering field sobriety tests, i.e., erratic driving, bloodshot, watery eyes, and the length of time to come to a stop.

8

**{¶31}** Most fundamentally, there is no "magic" number of factors required to be present to justify administering field sobriety tests. As the Sixth District aptly remarked in *State v. Martorana*, 6th Dist. Sandusky No. S-22-011, 2023-Ohio-662:

**{¶32}** "It is often a close issue whether the specific facts of a case provide an officer with reasonable suspicion for conducting field sobriety tests. *State v. Beeley*, 6th Dist. Lucas No. L-05-1386, 2006-Ohio-4799, * * * ¶ 16. Such decisions are 'very fact-intensive.' *State v. Burkhart*, 2016-Ohio-7534, 64 N.E.3d 1004, ¶ 15 (4th Dist.). Ohio courts often reach differing conclusions when faced with seemingly similar circumstances. Numerous factors may be considered, and small differences between officers' descriptions of an encounter can form the basis for opposite outcomes. *State v. Watkins*, 2021-Ohio-1443, 170 N.E.3d 549, ¶ 26 (6th Dist.)." *Id.* at ¶ 34.

**{¶33}** Our review of the officer's dash cam footage reveals the officer was first alerted to Mr. Reynolds' erratic driving by a call into dispatch by another driver. After Mr. Reynolds passed the officer on the highway, the officer followed in pursuit and recorded him almost hitting the guard wall, in addition to swerving repeatedly and driving on the berm of the highway. Other vehicles can be seen trying to avoid his vehicle.

**{¶34}** We are, however, limited in our review without the benefit of a transcript that includes the officer's testimony of his observations and experience. Since Mr. Reynolds failed to support his claims by submitting a transcript of the proceedings or other appropriate statement, we presume the validity of the lower court's proceedings and affirm. *See Mentor v. Carriger*, 11th Dist. Lake No. 98-L-237, 2000 WL 522306 (Mar. 31, 2000).

**{¶35}** Mr. Reynolds also contends the trial court erred in its determination that "bloodshot, glassy eyes" can be a factor in the *Evans* analysis despite its removal as an

9

indicator of intoxication from the NHTSA manual. While we are unable to determine the merits of his argument because we have no record evidence of the pertinent NHTSA manual provisions, when confronted with a similar argument in *State v. Osborne*, 11th Dist. Lake Nos. 2018-L-124, 2018-L-125, & 2018-L-126, 2019-Ohio-3235, we noted:

**{¶36}** "Citing materials issued by the NHTSA, [the appellant argued] that speeding and bloodshot eyes should not be considered as indicators of OVI. However, NHTSA materials, unlike our binding precedent, do not carry the force of law. *State v. Bish*, 191 Ohio App.3d 661, 2010-Ohio-6604, ¶44 (7th Dist.). Further, NHTSA materials do not conclude that such factors are inconsistent with intoxication, especially when combined with other indicators. While many circumstances, taken alone, can be consistent with a completely innocent explanation, taken together, they are sufficient to support requiring field sobriety tests. *See United States v. Frantz*, 177 F.Supp.2d 760, 764 (S.D. Ohio 2001)." *Id.* at ¶ 40. *See also State v. Consiglio*, 9th Dist. Medina No. 20CA0035-M, 2021-Ohio-990, ¶ 16 (disregarding the appellant's argument that glassy eyes are not an indicator of impairment because the appellant failed to introduce that portion of the NHTSA manual into evidence at the suppression hearing and finding the trooper's testimony that glassy eyes are an indicator of impairment is consistent with case law).

**{¶37}** Lastly, Mr. Reynolds contends the trial court undermined the credibility of the findings of fact in this case by failing to address his claim that the officer's observation that Mr. Reynolds' speech was "slightly slurred" was contradicted by the booking video. More specifically, the trial court found:

**{¶38}** "[Mr. Reynolds] also takes issue with Officer Kuhse's testimony that Defendant's speech was slurred. Without objection from the City, Defendant offered booking video from the police station to show Defendant's speech was normal, which the

10

Court did watch. But it declines to address the issue of slurred speech because it would still conclude reasonable suspicion exists even in the absence of such a finding. The above noted facts, coupled with Officer Kuhse's experience, provided him with reasonable suspicion to administer field sobriety tests. Therefore, Defendant's argument on this claim is without merit."

{¶39} Mr. Reynolds' claim is without merit because whether his speech was "normal" at the police station has no bearing on the officer's observations of Mr. Reynolds' speech at the time of the initial stop. While Mr. Reynolds urges us to conduct a "de novo" review, we are limited by the record since he failed to carry his burden on appeal by failing to file a transcript of the suppression hearing.

{¶40} In support, Mr. Reynolds cites to *State v. Dye*, 2021-Ohio-3513, 178 N.E.3d 584 (6th Dist.). In that case, the Sixth District reversed the trial court's denial of the appellant's motion to suppress after determining the record lacked competent, credible evidence that the officer had a reasonable, articulable suspicion to conduct field sobriety tests as well as probable cause to arrest the appellant for an OVI. *Id.* at ¶ 80, ¶ 86.

{¶41} At the suppression hearing, the officer at first testified that the appellant's "speech was slurred." *Id.* at ¶ 75. After defense counsel played a video from the police cruiser that showed the appellant speaking clearly, the officer changed his testimony and clarified that the appellant's speech was slurred "at some point of the night," but he did not "remember" exactly when. *Id.* Critically, he did not testify that he noticed the appellant's speech was slurred before he decided to administer field sobriety tests. *Id.* Based on the remaining indicia of intoxication (red, glassy eyes at 4:30 a.m. and the odor of alcohol when the officer performed a pat-down), the court found that the officer did not have a reasonable, articulable suspicion to conduct field sobriety tests. *Id.* at ¶ 79. Most

11

distinguishable from the instant case, there was no other indicia of impairment "such as erratic driving, admission to drinking alcohol, stumbling, falling, or fumbling for paperwork—that could support [the officer's] administration of field sobriety tests." *Id.*

{¶42} The Sixth District also declined to consider the state of the appellant's eyes as support for the officer's probable cause determination because the trial court had evidence that the NHTSA does not consider bloodshot, glassy eyes to be an indicator of alcohol impairment, a fact the officer was aware of. *Id.* at ¶ 84. Thus, the facts presented in *Dye* are markedly different. In this case, we do not have the officer's testimony or the NHTSA manual, if it was entered into evidence, and, most notably, there are other indica of impairment present, i.e., erratic driving.

{¶43} Finding Mr. Reynolds' assignment of error to be without merit, the judgment of the Willoughby Municipal Court is affirmed.


JOHN J. EKLUND, P.J.,

EUGENE A. LUCCI, J.,

concur.

12

Case Nos. 2022-L-092, 2022-L-095