[Cite as *State v. Pierce*, 2024-Ohio-1560.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | Case No. 23CA000028 |
| | : | |
| JESSICA PIERCE | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Cambridge Municipal
                                Court, Case No. TRC2300450 &
                                CRB2300108

JUDGMENT:                       AFFIRMED

DATE OF JUDGMENT ENTRY:         April 23, 2024

APPEARANCES:

For Plaintiff-Appellee:                 For Defendant-Appellant:

WILLIAM H. FERGUSON                      LOGAN B. GRAHAM
CITY OF CAMBRIDGE LAW DIRECTOR           CROSS LAW OFFICE, LLC
150 Highland Ave., Suite 2               417 Main Street
Cambridge, OH 43725                      Caldwell, OH 43724

*Delaney, P.J.*

{¶1} Defendant-Appellant Jessica Pierce appeals her August 23, 2023 conviction by the Cambridge Municipal Court.

## FACTS AND PROCEDURAL HISTORY

{¶2} On February 8, 2023, two complaints were filed with the Cambridge Municipal Court in Guernsey County, Ohio, citing Defendant-Appellant Jessica Pierce with criminal behavior on February 5, 2023. In Case No. TRC2300450, Pierce was charged with a violation of R.C. 4511.19(A)(1)(a), driving while under the influence of alcohol. A breath test showed a 0.190% alcohol test result. In Case No. CRB2300108, Pierce was charged with a violation of R.C. 2919.22(C)(1), endangering children.

{¶3} Pierce filed a motion to suppress on March 6, 2023. In the motion, she raised two issues. First, she argued Trooper Kaden Miller with the Ohio State Highway Patrol lacked reasonable suspicion and/or probable cause to stop her vehicle for a marked lanes violation. Second, she argued the Trooper lacked a reasonable, articulable suspicion to detain her and administer field sobriety tests. An evidentiary hearing was held before the magistrate on April 5, 2023. The following facts were adduced at the hearing.

{¶4} On February 5, 2023, at approximately 1:38 a.m., Trooper Kaden Miller with the Ohio State Highway Patrol was in a marked police vehicle patrolling in Guernsey County, Ohio. He was patrolling near the town of Buffalo when he turned left on Vocational Road/State Route 35 and observed a vehicle in front of him. Trooper Miller observed that the vehicle was driving at inconsistent speeds and taking the curves of the road too fast. He also observed the vehicle drifting within the lane of travel:

They'd go from one side of the – of their lane, so it would have been in the northbound lane, drift to the other side of the double yellow. So the white fog line to the double yellow line, it would kind of go back and forth, sway back and forth between them.

(T. 10-11). Trooper Miller testified that he observed the vehicle go over the white fog line at least a tire width. The dash cam video of the vehicle's alleged marked lanes violation was played and admitted into evidence. On cross-examination, Trooper Miller was asked what consists of a marked lanes violation. He testified that a vehicle must drive over the line for a violation and he saw the vehicle go completely over the white line once. Based on Trooper Miller's observations, he activated his lights and initiated a traffic stop. The vehicle did not stop until about 25 seconds after Trooper Miller activated his lights. The vehicle pulled into a gravel driveway.

{¶5} Trooper Miller approached the driver's side of the vehicle. He identified Pierce as the driver of the vehicle. The registered owner of the vehicle was in the passenger seat, and two young children were sitting in car seats in the back seat. Trooper Miller asked Pierce for her identification. She opened the center console to look for it and after a few seconds, she told Trooper Miller she did not have her identification. The passenger gave Trooper Miller his identification. The passenger was doing the majority of the talking, explaining that he was really intoxicated.

{¶6} When Trooper Miller was asking for Pierce's identification, he noticed a strong odor of an alcoholic beverage coming from the vehicle. He asked Pierce where they were coming from and she responded, down the road, with no more specifics. He asked where they were headed, and Pierce responded that they were headed home.

Trooper Miller asked Pierce again where they had come from and she responded, Derwent. While Trooper Miller was asking Pierce questions, the passenger kept talking and responding. Trooper Miller asked Pierce for her identification again and she looked in the center console for about two seconds and shut it.

{¶7} Trooper Miller asked Pierce to step out of the vehicle. He asked her to step out of the vehicle because of her driving behavior and that she barely looked for her driver's license. The passenger was doing the majority of the talking, saying that he was very intoxicated. With the strong smell of an alcoholic beverage emanating from the vehicle, Trooper Miller wanted to speak with Pierce independently to ensure that she was okay to drive.

{¶8} When Pierce was out of the vehicle, Trooper Miller detected an odor of an alcoholic beverage emanating from her. Trooper Miller could not recall if Pierce exhibited slurred speech or had red, glassy eyes but he did not note those observations in his report. Pierce was not wearing shoes when she exited the car. He asked her if she had consumed any alcohol that evening and Pierce stated that she had a few beers around 6:00 p.m. Trooper Miller then made the decision to expand the scope of the stop and conduct standardized filed sobriety tests as part of his investigation.

{¶9} The Magistrate issued her decision on May 26, 2023. She first found the trooper's observation of the marked lane violations, along with Pierce's other erratic driving behaviors, constituted the requisite reasonable suspicion of a traffic violation necessary to support the stop of the vehicle. The Magistrate next found that the odor of alcohol, Pierce's admission to consuming alcohol, the time of the stop, and Pierce's evasive behavior during her interactions with the trooper combined to create a totality of

circumstances that supported a reasonable suspicion that Pierce was operating a vehicle while impaired. The extension of the stop to conduct standardized field sobriety tests was constitutionally justified.

{¶10} Pierce filed objections to the Magistrate's Decision. On July 26, 2023, the trial court overruled the objections to the Magistrate's Decision.

{¶11} On August 23, 2023, Pierce entered a plea of no contest to both case numbers. The trial court found Pierce guilty of the charges. He sentenced her to 60 days in jail on the OVI charge of R.C. 4511.191(A)(1)(h) but suspended 54 days and ordered her to complete a DIP course for three days of jail credit. On the child endangering charge, the trial court sentenced her to 60 days in jail to be served consecutive to the OVI case, with 59 days suspended.

{¶12} It is from this judgment that Pierce now appeals.

### ASSIGNMENTS OF ERROR

{¶13} Pierce raises two Assignments of Error:

I. [THE] TRIAL COURT ERRED IN UPHOLDING THE MAGISTRATE'S FINDINGS OF FACT WHICH ARE THE BASIS FOR THE TRIAL COURT'S DENIAL OF APPELLANT'S MOTION TO SUPPRESS.

II. THE TRIAL COURT ERRED IN CONCLUDING THAT THERE WAS A TOTALITY OF CIRCUMSTANCES WHICH SUPPORTED A REASONABLE AND ARTICULABLE SUSPICION SUFFICIENT TO ALLOW LAW ENFORCEMENT TO REQUEST STANDARD FIELD SOBRIETY TESTS.

## ANALYSIS

{¶14} In her two Assignments of Error, Pierce argues the trial court erred when it denied her motion to suppress. We first recite the applicable standard of review for a motion to suppress. Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42 (4th Dist.1993), overruled on other grounds.

{¶15} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. *See State v. Fanning*, 1 Ohio St.3d 19 (1982); *State v. Klein*, 73 Ohio App.3d 486 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *See Williams, supra*. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to

suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96 (8th Dist.1994).

## I.

{¶16} In her first Assignment of Error, Pierce contends the trial court erred in approving and adopting the Magistrate's Decision as to the finding of facts. She contends there are specific findings of fact that were not supported by competent, credible evidence. In its judgment entry approving the Magistrate's Decision, the trial court stated it had carefully reviewed all filings in making its determination to overrule Pierce's objections to the Magistrate's Decision.

{¶17} Because Pierce challenges the trial court's findings of fact, the appellate court must determine whether the findings of fact are against the manifest weight of the evidence. When reviewing a judgment under a manifest weight of the evidence standard, an appellate court has an obligation to presume that the findings of the trier of fact are correct. *A1 Heating & Cooling, Inc. v. Thomas*, 2024-Ohio-109, ¶ 41 (5th Dist.) citing *State v. Wilson*, 2007-Ohio-2202, ¶ 24. "[A]n appellate court may not simply substitute its judgment for that of the trial court so long as there is some competent, credible evidence to support the lower court's findings." *State ex rel. Celebrezze v. Environmental Enterprises Inc.*, 53 Ohio St.3d 147, 159 (1990); *Myers v. United Ohio Ins. Co.*, 2012-Ohio-340, ¶ 42 (5th Dist.).

{¶18} She first points this Court to the finding in Paragraph No. 5:

Defendant was unable to produce a driver['s] license upon request and during the course of her interaction with Trooper Miller, Defendant would not respond to his questions. Instead, her passenger answered the trooper's questions on her behalf.

(Magistrate's Decision, May 26, 2023). Pierce argues the record does not support the trial court's finding that Pierce would not respond to the trooper's questions and that the passenger answered questions on Pierce's behalf.

{¶19} Trooper Miller testified that when he was at the vehicle and speaking with Pierce and the passenger, the passenger did a majority of the talking. Trooper Miller also testified that Pierce answered some of the questions he asked of her. He first asked for her driver's license. (T. 15). She said she didn't have it, but the passenger provided his identification. (T. 15). The passenger started talking again when Trooper Miller asked where they were coming from. (T. 17). Pierce responded that they had come from just down the road without giving any specifics. (T. 17). Trooper Miller testified that the passenger began talking again, explaining how intoxicated he was. (T. 17). Trooper Miller asked them where they were headed, and Pierce said they were headed home. (T. 17). He asked again where they were coming from and Pierce said, Derwent. (T. 17). Trooper Miller asked Pierce for her driver's license again. Pierce opened the center console and then shut it. (T. 18). At this point, Trooper Miller asked Pierce to step out of the vehicle. (T. 19). He made this choice due to the smell of an alcoholic beverage coming from the vehicle, Pierce's driving behavior, and that the passenger was doing a lot of the talking. (T. 19).

{¶20} The competent, credible evidence shows that Pierce responded to some of the questions asked of her; however, there is no dispute that the admittedly intoxicated passenger, not the driver of the vehicle who was just pulled over for a marked lanes violation, did a majority of the speaking during Trooper Miller's initial investigation. The passenger provided his identification, but driver of the vehicle was unable to provide her driver's license. Under those circumstances, including the odor of alcohol, Trooper Miller testified that he felt it was necessary to ask the driver to step out of the vehicle to continue his investigation.

{¶21} It was at that point that Trooper Miller testified he detected an odor of an alcoholic beverage emitting from Pierce herself. (T. 20). The Magistrate's Decision states that when Pierce was asked to exit the vehicle, "Trooper Miller detected a strong odor of an alcoholic beverage emanating specifically from Defendant." (Magistrate's Decision, May 26, 2023). In the State's response to Pierce's objections to the Magistrate's Decision, the State concedes that Trooper Miller testified that he detected an odor of an alcoholic beverage coming from Pierce but did not describe the odor as "strong." Pierce contends that in Trooper Miller's report of the stop, he noted an "odor of alcoholic beverage" but did not specify it came from Pierce. Because the trooper's testimony at trial conflicted with his report, Pierce argues on appeal that the finding of fact is not supported by competent, credible evidence.

{¶22} When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. *State v. Carrillo*, 2023-Ohio-3264, ¶ 33 (5th Dist.) citing *State v. Kay*, 2022-Ohio-3538, ¶ 13 (5th Dist.), citing *State v. Dunlap*, 73 Ohio St.3d 308, 314, 1995-Ohio-

243; *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). Trooper Miller testified that when he came to the vehicle, he smelled the strong odor of an alcoholic beverage emanating from the vehicle. He removed Pierce from the vehicle to confirm whether or not Pierce smelled like alcohol. (T. 41). Trooper Miller testified that he smelled an odor of an alcoholic beverage coming from Pierce after she exited the vehicle. The report noted that Trooper Miller smelled an odor of alcohol. The trial court was in the best position to resolve the question of fact as to the odor of alcohol and from whom the odor was emanating from. We find the trial court's determination was supported by the record and not against the manifest weight of the evidence.

{¶23} Pierce's first Assignment of Error is overruled.

**II.**

{¶24} In her second Assignment of Error, Pierce contends the trial court erred when it concluded the totality of the circumstances supported a reasonable and articulable suspicion to expand the traffic stop to conduct standardized field sobriety tests. We disagree.

{¶25} A request made of a validly detained motorist to perform field sobriety tests is generally outside the scope of the original stop and must be separately justified by other specific and articulable facts showing a reasonable basis for the request. *State v. Albaugh*, 2015-Ohio-3536, ¶ 18 (5th Dist.), quoting *State v. Anez*, 108 Ohio Misc.2d 18, 26–27 (2000).

{¶26} "Reasonable suspicion is "* * * something more than an inchoate or un-particularized suspicion or hunch, but less than the level of suspicion required for probable cause." *State v. Shepherd*, 122 Ohio App.3d 358, 364 (2nd Dist.1997). "A court

will analyze the reasonableness of the request based on the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Farey*, 2018-Ohio-1466, ¶ 23 (5th Dist.), citing *Village of Kirtland Hills v. Strogin*, 2006-Ohio-1450, ¶ 13 (6th Dist.) (internal citation omitted).

{¶27} In analyzing the facts presented, we accept the template set forth by the Supreme Court of Ohio in *State v. Batchili*, 2007-Ohio-2204, paragraph two of the syllabus: "The 'reasonable and articulable' standard applied to a prolonged traffic stop encompasses the totality of the circumstances, and a court may not evaluate in isolation each articulated reason for the stop." The intrusion on the drivers' liberty resulting from a field sobriety test is minor, and the officer therefore need only have reasonable suspicion the driver is under the influence of alcohol in order to conduct a field sobriety test. *State v. Toure*, 2023-Ohio-2559, ¶ 23 (5th Dist.); *State v. Knox*, 2006-Ohio-3039 (2nd Dist.). *See also State v. Bright*, 2010-Ohio-1111 (5th Dist.).

{¶28} In this case, Pierce argues there was no justification for Trooper Miller to ask her to perform standardized field sobriety tests because he testified that he did not observe slurred speech, bloodshot eyes, confusion, or lack of balance. His only observations about Pierce were her erratic driving, odor of alcohol, time of day of the stop, and her admission to consuming alcohol at 6:00 p.m.

{¶29} In *State v. Hodges*, 2022-Ohio-3535, ¶¶ 16-17 (5th Dist.), we reviewed a lengthy and non-exhaustive list of factors that are relevant to evaluate whether an officer had reasonable suspicion to administer field sobriety tests under the totality of circumstances including (1) the time of day of the stop (Friday or Saturday night as

opposed to, e.g., Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer ("very strong," "strong," "moderate," "slight," etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given. *State v. Evans*, 127 Ohio App.3d 56, fn. 2 (11th Dist.1998). "All of these factors, together with the officer's previous experience in dealing with drunken drivers, may be taken into account by a reviewing court in determining whether the officer acted reasonably." *Id.*

{¶30} It is often a close issue whether the specific facts of a case provide an officer with reasonable suspicion for conducting field sobriety tests. *State v. Toure*, 2023-Ohio-2559, ¶ 26 (5th Dist.) citing *State v. Beeley*, 6th Dist. Lucas No. L-05-1386, 2006-Ohio-4799, ¶ 16. Such decisions are "very fact-intensive." *Id.* quoting *State v. Burkhart*, 2016-Ohio-7534, ¶ 15 (4th Dist.). Ohio courts often reach differing conclusions when faced with seemingly similar circumstances. Numerous factors may be considered, and small differences between officers' descriptions of an encounter can form the basis for opposite

outcomes. *State v. Watkins*, 2021-Ohio-1443, ¶ 26 (6th Dist.); *State v. Martorana*, 2023-Ohio-662, ¶ 34 (6th Dist.).

{¶31} In this case, Trooper Miller observed Pierce's erratic driving and initiated the traffic stop based on a marked lanes violation while driving on Vocational Road, a curvy road. Pierce has not assigned the marked lanes violation as error. The stop was made at 1:38 a.m. on Saturday morning. Trooper Miller observed the passenger was admittedly intoxicated and there were two young children in car seats in the back seat. Trooper Miller noticed a strong odor of alcohol emanating from the vehicle and when Pierce was out of the vehicle, Trooper Miller noticed an odor of alcohol emanating from her. Pierce looked for her driver's license in the center console two times and could not find it. Pierce exited the vehicle without wearing shoes. Pierce admitted to having a few beers at approximately 6:00 p.m.

{¶32} Viewing the totality of the circumstances through the eyes of a reasonable and prudent police officer, the trooper had a reasonable suspicion that Pierce was driving while intoxicated and was justified in conducting standardized field sobriety tests.

{¶33} Pierce's second Assignment of Error is overruled.

## CONCLUSION

{¶34} The judgment of the Cambridge Municipal Court is affirmed.

By: Delaney, P.J.,

Gwin, J. and

Wise, J., concur.