**[Cite as *State v. Duch*, 2025-Ohio-1162.]**

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Robert G. Montgomery, P.J. |
|  | : | Hon. Kevin W. Popham, J. |
| Plaintiff-Appellant | : | Hon. David M. Gormley, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2024CA00035 |
| BRACKEN D. DUCH | : |  |
|  | : |  |
| Defendant-Appellee | : | OPINION |

CHARACTER OF PROCEEDING:     Appeal from the Fairfield County Municipal
Court, Case No. TRC2402856

JUDGMENT:     Reversed and Remanded

DATE OF JUDGMENT ENTRY:     March 31, 2025

APPEARANCES:

For Plaintiff-Appellant

ANDREW D. SEMELSBERGER
Lancaster Law Director
136 W. Main Street
Lancaster, OH 43130

For Defendant-Appellee

JAMES L. DYE
Box 161
Pickerington, OH 43147

*Popham, J.*

{¶1}   Plaintiff-appellant the State of Ohio appeals the August 2, 2024, Judgment Entry of the Fairfield County Municipal Court granting defendant-appellee Bracken D. Duch's ["Duch"] motion to suppress evidence.

*Facts and Procedural History*

{¶2}   On April 17, 2024 at approximately 2:37 a.m., Officer Collin McMenamin of the Pickerington Police Department conducted a traffic stop of a blue Toyota Highlander driven by Duch because one of the headlights and a license plate light were out.  Supp. T. at 5. The stop was recorded on the officer's body camera. Supp. T. at 8; State's Exhibit 1.1.

{¶3}   As he approached the open window on the driver side of the vehicle, Officer McMenamin smelt a "strong odor" of marijuana coming from the vehicle. Supp. T. at 6. Once at the window of the vehicle, Officer McMenamin, who had received training in detecting the smell, smelt the odor of both "raw" and "burnt" marijuana. Id. at 7; 9-10.

{¶4}   Duch told the officer that he had just gotten off work at a nearby restaurant and he was heading home. Supp.T. at 6; State's Exhibit 1.1 at 02:40:28. When Officer McMenamin asked for Duch's insurance information, Duch told the officer that it was on his cell phone, which was charging. State's Exhibit 1.1 at 02:40:23.

{¶5}   When asked by the officer, Duch admitted to smoking marijuana earlier in the day at around 9:00 a.m. in his vehicle because he could not smoke in his apartment. State's Exhibit 1.1 at 02:39:11; 02:41:34. After first denying there were any drugs or marijuana in the vehicle, Duch admitted he had marijuana in the car. *Id.* at 02:38:54; 02:39:02; 02:41:35. Officer McMenamin continued,

> Here's what I'm gonna do. I'm gonna go run this [license and registration] make sure you're valid. Would you mind running through some tests just to check your eyes, just to make sure you're good to drive, ok, because I am getting that odor, I wanna make sure you're safe to drive.

State's Exhibit 1.1 at 02:40:54. The officer further informed Duch that even though marijuana was now legal in Ohio, it is still illegal to smoke in the car. *Id.* at 02:41:49.

{¶6} Officer McMenamin had Duch perform the Standardized Field Sobriety Tests after which Duch was placed under arrest for "Driving or Physical Control of Vehicle While Under the Influence of Alcohol or Drugs," in violation of Pickerington Cod.Ord 434.01(a)(1)(D).

{¶7} On July 2, 2024, Duch filed a Motion to Suppress, alleging that the officer lacked reasonable suspicion to stop Duch, to expand the scope of the traffic stop into an OVI investigation, and, further, lacked probable cause to arrest Duch for OVI.

{¶8} On August 2, 2024, an evidentiary hearing was held on Duch's motion to suppress. At the commencement of the hearing, Duch limited the issue to whether the officer had reasonable suspicion to expand the scope of the traffic stop into an OVI investigation. Supp. T. at 4. Only Officer McMenamin testified during the hearing. At the conclusion of the hearing the trial judge ruled,

> Marijuana cases are going to be the hardest because again, marijuana is now legal and there is no bad driving. It's a headlight and a license plate light. Two minutes to find your insurance is not an unreasonable amount of time and as pointed out, the officer was doing divided attention during the period of the search and the Defendant

answered his questions and did what he needed to do. The only admission was 17 hours before which the officer admitted if he's telling you the truth, but the officer has no idea whether or not he's telling the truth. But the Defendant [s]tates he was at work for five hours. I don't think there is enough in this matter so I sustain the motion to suppress.

Supp.T. at 21.

*Assignment of Error*

{¶9}   The State raises one Assignment of Error,

{¶10} "I. THE TRIAL COURT ERRED IN GRANTING DUCH'S MOTION TO SUPPRESS WHEN IT FOUND THAT THE OFFICER LACKED REASONABLE SUSPICION TO EXPAND THE SCOPE OF THE TRAFFIC STOP INTO AN OVI INVESTIGATION."

**Law and Analysis**

*Jurisdiction*

{¶11} Initially, we must determine whether we have jurisdiction to consider the merits of this appeal. Subject-matter jurisdiction may not be waived or bestowed upon a court by the parties to the case. *State v. Wilson*, 73 Ohio St.3d 40, 46 (1995). It may be raised sua sponte by an appellate court. *State ex rel. Wright v. Ohio Adult Parole Auth.*, 75 Ohio St.3d 82, 84 (1996).

{¶12} A court of appeals has jurisdiction to entertain the State's appeal from a trial court's decision to suppress evidence only where the State has complied with Criminal Rule 12(K). *State v. Buckingham*, 62 Ohio St.2d 14 (1980), syllabus (interpreting former Criminal Rule 12(J)).

{¶13} Criminal Rule 12(K) states in pertinent part:

When the state takes an appeal as provided by law from an order suppressing or excluding evidence, the prosecuting attorney shall certify that both of the following apply:

(1) The appeal is not taken for the purpose of delay;

(2) The ruling on the motion or motions has rendered the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed.

The appeal from an order suppressing or excluding evidence shall not be allowed unless the notice of appeal and the certification by the prosecuting attorney are filed with the clerk of the trial court within seven days after the date of the entry of the judgment or order granting the motion.

{¶14} The judge's entry granting the motion to suppress was filed August 2, 2024. The State filed a Criminal Rule 12(K) certification in the trial court on August 5, 2024. Accordingly, a certifying statement was timely filed by the prosecutor as outlined in Criminal Rule 12(K). We therefore have jurisdiction to proceed to the merits of this appeal.

### STANDARD OF APPELLATE REVIEW

{¶15} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. When ruling on a motion to suppress, the trial judge assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. *See State v. Dunlap*, 73 Ohio St.3d 308, 314 (1995); *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). Accordingly, a reviewing

court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See, Burnside; Dunlap; State v. Long*, 127 Ohio App.3d 328, 332 (4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142 (4th Dist. 1996); *State v. Hill*, 2024-Ohio-522, ¶ 16 (5th Dist.). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. *See, Burnside, citing State v. McNamara*, 124 Ohio App.3d 706 (4th Dist. 1997); *see generally United States v. Arvizu*, 534 U.S. 266 (2002), *overruled in part on* separate *grounds by Davis v. Washington, 547 U.S. 813 (2006) as stated in United States v. Idleman, 2018 WL 4677859 (N.D.W.Va. July 16, 2018) and State v. Strong*, 2019-Ohio-2888, ¶ 19 (4th Dist.); *Ornelas v. United States*, 517 U.S. 690 (1996). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review. *Ornelas.* Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas,* 517 U.S. at 698.

**Issue for Appellate Review:** *Whether Officer McMenamin had reasonable articulable suspicion to believe Duch was driving under the influence of alcohol or drugs to prolong the traffic stop in order to ask Duch to submit to the standardized field sobriety tests*

### The traffic stop

{¶16} The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures…." The Fourth Amendment is enforced against the States by virtue of the due process clause of the Fourteenth Amendment of the United States Constitution. *See Mapp v. Ohio*, 367 U.S. 643, 655 (1961). The stop of a vehicle

and the detention of its occupants by law enforcement, for whatever purpose and however brief the detention may be, constitutes a seizure for Fourth Amendment purposes. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979) *citing United States v. Martinez-Fuerte*, 428 U.S. 543, 556-558 (1976).

{¶17} The parties agree that the stop of Duch's vehicle for the lack of one headlight and a license plate light was lawful. Therefore, the question becomes whether Officer McMenamin had a reasonable, articulable suspicion to expand the investigative scope of the detention.

*Expansion of the traffic stop*

{¶18} "'[W]hen detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning.'" *State v. Batchili*, 2007-Ohio-2204, ¶ 12, *quoting State v. Keathley*, 55 Ohio App.3d 130, 131 (2d Dist. 1988). However, "the detention of a stopped driver may continue beyond [the normal] time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop." *Batchili,* ¶ 15. "In determining whether a detention is reasonable, the court must look at the totality of the circumstances." *State v. Matteucci*, 2003-Ohio-702, ¶ 30 (11th Dist.), *citing State v. Bobo*, 37 Ohio St.3d 177, 178 (1988); *State v. Roberts,* 2023-Ohio-2763, ¶ 16 (5th Dist.).

*Reasonable suspicion*

{¶19} The intrusion on the driver's liberty resulting from a field sobriety test is minor, and the officer therefore need only have reasonable suspicion the driver is under the influence of alcohol to conduct a field sobriety test. *See State v. Bright*, 2010-Ohio-1111, ¶17 (5th Dist.); *State v. Toure*, 2023-Ohio-2559, ¶ 23 (5th Dist.) When analyzing

the facts presented during a prolonged traffic stop, this Court has accepted the template set forth by the Supreme Court of Ohio in *State v. Batchili*, 2007-Ohio-2204, paragraph two of the syllabus:

> The "reasonable and articulable" standard applied to a prolonged traffic stop encompasses the totality of the circumstances, and a court may not evaluate in isolation each articulated reason for the stop.

{¶20} This Court more closely examined "reasonable suspicion" in *State v. Roberts,* finding that,

> Reasonable suspicion is something more than an inchoate or unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause. *State v. Shepherd*, 122 Ohio App.3d 358, 364, 701 N.E.2d 778 (2nd Dist. 1997). A court will analyze the reasonableness of the request based on the totality of the circumstances, viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold. *State v. Farey*, 5th Dist. Stark, 2018-Ohio-1466, 110 N.E.3d 960, ¶ 23, *citing Village of Kirtland Hills v. Strogin*, 6th Dist. Lake App. No. 2005-L-073, 2006-Ohio-1450, 2006 WL 766541, ¶ 13 (Cleaned up.)

2023-Ohio-2763, ¶ 17 (5th Dist.).

{¶21} The Ohio Supreme Court has identified certain specific and articulable facts that would justify an investigatory stop by way of reasonable suspicion, factors that fall into four general categories: (1) location; (2) the officer's experience, training, or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding

circumstances. *State v. Bobo*, 37 Ohio St.3d 177, 178-79 (1988); *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991). No single factor is dispositive; the decision must be based on the totality of the circumstances. *Bobo* at paragraph one of the syllabus; *State v. White*, 2006-Ohio-2966, ¶ 16 (9th Dist.); *Roberts* at 18.

{¶22} It is often a close issue whether the specific facts of a case provide an officer with reasonable suspicion for conducting field sobriety tests. *State v. Beeley*, 2006-Ohio-4799, ¶ 16 (6th Dist.); *State v. Toure,* 2023-Ohio-2559, ¶ 26 (5th Dist.); *Parma v. Perotti,* 2023-Ohio-3472, * 6 (8th Dist.); *State v. Reynolds*, 2023-Ohio-2030, ¶ 32 (11th Dist.). Such decisions are "very fact intensive." *State* v. *Burkhart,* 2016-Ohio-7534, ¶15 (4th Dist.); *Toure* at ¶ 26; *State v. Pierce*, 2024-Ohio-1560, ¶ 30 (5th Dist.); *State v. Lopez,* 2024-Ohio-2394, ¶ 39 (7th Dist.). Ohio courts often reach differing conclusions when faced with seemingly similar circumstances. Numerous factors may be considered, and small differences between officers' descriptions of an encounter can form the basis for opposite outcomes. *State v. Watkins*, 2021-Ohio-1443, ¶ 26 (6th Dist.); *State v. Martorana,* 2023-Ohio-662, ¶ 34 (6th Dist.); *Toure* at ¶ 26; *Pierce* at ¶30; *Reynolds* at ¶ 32.

### *Officer McMenamin had reasonable suspicion to suspect Duch was driving under the influence*

{¶23} In the case at bar, the body camera video establishes that Officer McMenamin immediately noted a strong odor of both raw and burnt marijuana emanating from inside the vehicle. Officer McMenamin further noted Duch's eyes were "red and blood shot." Supp. T. at 8. Duch admitted to the officer that he had smoked marijuana earlier in the day in his vehicle. State's Exhibit 1.1 at 02:38:02; 02:41:34. Duch denied at

first having marijuana in the vehicle. *Id.* at 02:38:54. He then admitted to the officer he had marijuana in the vehicle. *Id.* at 02:39:02. The officer's encounter with Duch began at approximately 2:37 a.m. Duch was alone in the vehicle.

{¶24} Although Duch provided a possible explanation concerning the smell of marijuana and his red, bloodshot eyes, the officer is not obliged to accept that explanation. "Reasonable suspicion [of drunk driving] 'need not rule out the possibility of innocent conduct.'" *Navarette v. California*, 572 U.S. 393, 403 (2014), *quoting United States v. Arvizu*, 534 U.S. 266, 277 (2002). *See also, State v. Mays*, 2008-Ohio-4539, ¶ 17 ("the question of whether appellant might have a possible defense to a charge… is irrelevant in our analysis of whether an officer has a reasonable and articulable suspicion to initiate a traffic stop. An officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge.").

{¶25} This Court has found, in cases without an observation of erratic driving, that an odor of alcohol plus eye condition may be combined with an admission of alcohol consumption to establish an indicium of impairment giving rise to a reasonable suspicion to tip the balance in favor of moving forward on field sobriety testing. *See State v. Strope*, 2009-Ohio-3849, ¶ 21 (5th Dist.) (headlight violation, moderate odor of alcohol, denied drinking, and subsequently admitted to consuming a few alcoholic beverages); *State v. Bright*, 2010-Ohio-1111, ¶ 27 (5th Dist.) (registration issue, strong odor of alcohol, glassy eyes and the driver admitted to consuming "a beer"); *State v. Hamilton*, 2017-Ohio-8826, ¶17 (5th Dist.) (improper license plates, moderate odor of alcohol, bloodshot and glassy eyes and the driver admitted to consuming two beers); *State v. Toure*, 2023-Ohio-2559,

¶¶ 28-29 (5th Dist.) (Welfare check on vehicle on the side of the road; odor of alcohol, red/glassy eyes and pinpoint pupils, slurred speech).

{¶26} Elsewhere, it is likewise well settled that where a traffic stop is initiated and the odor of alcohol is combined with glassy or bloodshot eyes and further indicia of intoxication, such as an admission of having consumed alcohol, reasonable suspicion exists. *State v. Wells*, 2005-Ohio-5008, ¶16 (2d Dist.) (no headlights, admitted consuming 4 or 5 beers); *State v. Cooper,* 2002-Ohio-2778, * 4 (2d Dist.) (admitted to having "a couple of beers," glassy bloodshot eyes, strong odor of alcohol); *State v. Robinson*, 2002-Ohio-2933, * 3 (2d Dist.) (strong odor of alcohol, admitted to having a couple of beers); *State v. Mapes*, 2005-Ohio-3359, ¶ 42 (6th Dist.) (odor of alcohol, slurred speech and glassy and bloodshot eyes); *Village of Kirtland Hills v. Strogin*, 2006-Ohio-1450, ¶ 20 (11th Dist.) (strong odor of alcohol, admission of drinking); *State v. Beeley,* 2006-Ohio-4799, ¶ 16 (6th Dist.) (strong odor of alcohol, admission of drinking); *Village of New London v. Gregg*, 2007-Ohio-4611, ¶ 20 (6th Dist.) (admission of drinking).

{¶27} We see no reason why the odor of burnt marijuana should not be subject to the same analysis as the odor of alcohol. *State v. Gray,* 2024-Ohio-347, ¶ 20 (5th Dist.). However, we wish to emphasize that on December 7, 2023, the use of recreational marijuana became legal in Ohio. *See, e.g.,* R.C. 3780.29 (Home Grow); R.C. 3780.36 (Limitations on Conduct by Individuals). Therefore, the odor of burnt or raw marijuana alone, would not be sufficient to provide a reasonable suspicion to expand the scope of the initial traffic stop in order to conduct field sobriety tests.

{¶28} We acknowledge this is a close call. However, based upon the totality of the circumstances, we do not agree with the trial judge's analysis. We find Officer

McMenamin "relied on specific articulable facts giving rise to a reasonable suspicion [Duch] was driving under the influence, justifying an extension of the initial detention for the performance of field sobriety testing." *State v. Ciminello*, 2018-Ohio-467, ¶ 25 (5th Dist.). Officer McMenamin, detected an odor of marijuana, observed red, bloodshot eyes, and received an admission from Duch that he has smoked marijuana in the vehicle which is prohibited by R.C. 3780.36(D)(2).

{¶29} Upon review, we find the trial judge erred in granting the motion to suppress.

{¶30} The sole assignment of error is granted.

{¶31} The judgment of the Fairfield Municipal Court is reversed, and this matter is remanded to that court for further proceedings in accordance with our Opinion and the law.


By Popham, J., and

Montgomery, P.J., concurs;

Gormley, J., dissents

*Gormley, J., dissenting*

**{¶32}** As the majority rightly notes in paragraph 28 above, the decision in this Fourth Amendment case "is a close call." Because I believe that the trial judge correctly granted defendant Duch's motion to suppress, I dissent.

**{¶33}** Judge Popham's opinion for the court lays out the facts. The officer in this case saw at the roadside at a very early hour a motorist whose eyes were red and who was seated in a vehicle from which a strong odor of raw and burnt marijuana was emanating. Those were the sole facts that pointed toward the possibility of impaired driving on Duch's part.

**{¶34}** The officer had seen no bad driving, had received no reports about bad driving, and could see at the roadside no other indicia of intoxication, such as fumbling with documents or slurred speech or jumbled thinking. Duch was not belligerent or drowsy, and he responded appropriately to the officer's questions.

**{¶35}** To be sure, the majority finds significance in Duch's claim that he had smoked marijuana in the vehicle more than 17 hours earlier. That admission, in my view, is akin to a motorist indicating that he or she consumed some alcohol two days ago. Such a statement could not reasonably lead an officer to believe that a driver is affected by the alcohol now.

**{¶36}** Of course, an officer is free to disbelieve a driver's statement about drug or alcohol consumption. Many is the time that motorists at the roadside have untruthfully said "no" in response to the question "have you been drinking tonight?" But the point here is that that "no" answer — whether the officer finds it credible or not — provides no

particularized and objective basis for an officer to suspect that criminal activity may be afoot.

{¶37} The same can be said of Duch's statement about his many-hours-earlier marijuana usage. The significance of that statement is minimal, in my view. It tells us nothing about Duch's condition at the roadside and is not the kind of articulable fact that could support a reasonable-suspicion finding.

{¶38} And the fact that Duch evidently committed the minor-misdemeanor offense of using marijuana in his vehicle many hours earlier is of no consequence to an objective evaluation of his condition at the time of the traffic stop. Under the Fourth Amendment, our focus should be not on whether Duch had been a model citizen the day before but rather whether he was perhaps under the influence when the officer was interacting with him at the roadside.

{¶39} We are left, then, with the fact that Duch was driving at a very early hour, that his eyes were red, and that he was in a vehicle that smelled strongly of marijuana. Those facts did not, in my view, provide a reasonable and articulable basis for the prolonging of the traffic stop or for the administration of field sobriety tests. *See, e.g.*, *State v. Dye*, 2021-Ohio-3513, ¶ 69 (6th Dist.) ("without additional indicia of intoxication, . . . the odor of alcohol and bloodshot, glassy eyes — standing alone — are insufficient to provide reasonable suspicion for field sobriety tests"); *State v. Swartz*, 2009-Ohio-902, ¶ 16 (2d Dist.) ("A de minimis traffic violation, coupled with glassy, bloodshot eyes and an unspecified odor of alcohol is insufficient justification to conduct field sobriety tests"); *State v. Reed*, 2006-Ohio-7075, ¶ 12 (7th Dist.) (reasonable suspicion for the administration of field sobriety test was not shown where "the officer detected a slight

smell of alcohol on Reed, that he had red glassy eyes, and admitted to drinking two beers").

{¶40} I respectfully dissent.