[Cite as *State v. Gray*, 2025-Ohio-4607.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-250119 |
| | | TRIAL NO. B-2404485 |
| Plaintiff-Appellant, | : | |
| vs. | : | |
| THOMAS GRAY, | : | *JUDGMENT ENTRY* |
| Defendant-Appellee. | : | |

This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 10/3/2025 per order of the court.**

**By:**_____
      **Administrative Judge**

[Cite as *State v. Gray*, 2025-Ohio-4607.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-250119 |
| | | TRIAL NO. B-2404485 |
| Plaintiff-Appellant, | : | |
| vs. | : | |
| THOMAS GRAY, | : | *O P I N I O N* |
| Defendant-Appellee. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: October 3, 2025

*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Scott Heenan,* Chief Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*Raymond T. Faller*, Hamilton County Public Defender, and *David H. Hoffmann*, Assistant Public Defender, for Defendant-Appellee.

**CROUSE, Judge.**

{¶1} In December 2023, via R.C. Ch. 3780, Ohio legalized the use of marijuana. In this appeal, we are presented with the question of whether, under this new statutory regime, the smell of marijuana alone establishes probable cause to search a vehicle pursuant to the automobile exception to the warrant requirement.

{¶2} We hold that it does not. While the smell of marijuana remains a relevant factor under the totality of the circumstances to a probable-cause analysis, it is no longer sufficient, standing alone, to provide the required probable cause to search a vehicle pursuant to the automobile exception.

{¶3} Because there were no other factors present in this case to support a warrantless search of the vehicle under the automobile exception to the Fourth Amendment's warrant requirement, and because the search of the vehicle driven by defendant-appellee Thomas Gray was not justified as a search incident to arrest or to ensure officer safety before Gray was allowed to reenter the vehicle, we hold that the trial court did not err in granting Gray's motion to suppress contraband recovered during the search of the vehicle.

## I. Factual and Procedural History

{¶4} A vehicle driven by Gray was stopped after an officer ran its license plate and discovered that a misdemeanor warrant for Gray was attached to the plate. Upon searching the vehicle, officers discovered various drugs and a weapon. Plaintiff-appellant the State of Ohio subsequently issued an indictment charging Gray with 12 felony drug offenses, as well as having a weapon while under disability, carrying a concealed weapon, and improper handling of a firearm.

{¶5} Gray filed a motion to suppress both the stop of the vehicle and its subsequent search. He argued that the police lacked a reasonable articulable suspicion

to make an investigatory stop of the vehicle and that the search of his person and the automobile incident to arrest were fruits of his unconstitutional detention. Gray contended that once he was detained, "there was no reason to search the automobile, especially since the registered owner of the vehicle was there and the small amount of marijuana admitted to was legal to possess. Safety was not a concern since both the driver and passenger were outside the vehicle."

{¶6} The State filed a memorandum in opposition to Gray's motion to suppress. It argued that officers were not required to have witnessed a traffic violation before initiating a stop of the vehicle that Gray was driving, and that the officers' reasonable suspicion that Gray was in the vehicle, along with their knowledge that Gray had an outstanding warrant that was attached to the vehicle's license plate, allowed them to initiate a traffic stop. The State further argued that the officers lawfully searched the vehicle as a search incident to arrest.

{¶7} At the suppression hearing, Cincinnati Police Officer Casey Carver testified that, on September 16, 2024, she was assigned to the department's Crime Gun Intelligence Center. On that day, she received a request from Officer Jennings, who was operating as a plainclothes officer at the time, to run a license plate for a vehicle that was driving on a city street. Officer Carver discovered that a misdemeanor warrant issued by the City of Lockland for one Thomas Gray was attached to the license plate. She relayed that information, including a description of the subject of the warrant, to Officer Jennings. Officer Carver testified that after receiving this information, she received confirmation that the description she had provided matched the driver of the vehicle containing the plate that Officer Jennings had asked her to run. Officer Carver's testimony did not explain why Officer Jennings had requested this information or provide any additional information about Gray.

4

**{¶8}**     Officer Carver testified that she subsequently initiated a traffic stop of the vehicle bearing the license plate that she had just run. Because she was the sole officer initiating the stop, Officer Carver initially told Gray that he was stopped because law enforcement was conducting a traffic blitz in the area. She explained that she did so to keep Gray calm and prevent him from fleeing. She also threw a stop stick under the rear tire of the vehicle as she approached. According to Officer Carver, this was standard operating procedure for her unit, which focused on priority offenders engaging in gun crime and violence.

**{¶9}**     Officer Carver testified that backup officers arrived almost immediately, upon which she confirmed Gray's identity as the subject of the warrant, removed him from the vehicle, and handcuffed him. She stated that Gray was calm and collected when she approached the vehicle, that he never tried to flee, and that he remained appropriate and cordial throughout their interaction.

**{¶10}**     Officer Carver testified that she smelled marijuana and asked Gray if there was any marijuana in the vehicle. Gray told her that he had a little bit of "cotty," which Officer Carver explained was a slang term for the burnt end of a marijuana blunt.

**{¶11}**     Officer Carver confirmed that her body-worn camera ("BWC") captured the traffic stop. The footage from her BWC was admitted and played for the court during Officer Carver's testimony. The footage depicted her removing Gray from the vehicle, handcuffing him, and placing him in her police cruiser. Once Gray was in the cruiser, Officer Carver said to Gray, "let's just figure out what's going on [with the warrant] because you may be going back in the vehicle." The video then depicts a fellow officer approach Officer Carver and inform her that a weapon and drugs were found in the vehicle. Gray was subsequently read his *Miranda* rights and arrested.

{¶12} Officer Carver explained that, when the officer approached her with this information about the contraband recovered from the vehicle, she was on the phone with the Lockland Police Department confirming the warrant issued for Gray.

{¶13} When asked if Lockland intended to re-cite Gray back to Mayor's Court, Officer Carver responded,

> It seems like [that] per that audio. I don't remember exactly what they said. But per that audio, it seems like they offered that as an option. But, at that point, there was already a gun, which he denied was in the vehicle and drugs that were in the vehicle. And so we have original charges that we would be transporting him to the Justice Center for. And so I let them know that we have new charges and that a re-cite would not be needed but rather a holder at the Justice Center.

{¶14} Officer Carver clarified that the vehicle driven by Gray had already been searched when she was talking to the Lockland Police Department. When asked if she intended to let Gray back into the vehicle after she stopped him, Officer Carver responded, "Well, as you note on [the] body camera, I let him know that there's a possibility that he would go back into the vehicle. I was not aware that there was a firearm or drugs in the vehicle until the officer walked up to me and told me that."

{¶15} Officer Carver testified that consent to search had not been obtained from either Gray or his passenger, LaQuieta Reese, who was the vehicle's owner. Officer Carver stated her belief that consent was not necessary because the officers were authorized to search the vehicle "incident to arrest," and because "you're not allowed to have burnt marijuana in a vehicle. You cannot operate a motor vehicle under the influence of marijuana." Officer Carver's testimony also indicated that the vehicle was searched because officers believed Gray may have been carrying a weapon.

She testified that the initial description of Gray provided by Officer Jennings indicated that Gray carried a type of bag on his person that the officers knew was commonly used to carry guns. But, she explained, when Gray was removed from the car, he no longer had the bag on him. The bag was found on the floorboard of the car.

{¶16} Cincinnati Police Officer Rasheen Jennings also testified at the suppression hearing. Officer Jennings explained that he worked in a dual capacity in the Cincinnati Police Crime Gun Intelligence Unit and as a task force officer with the Department of Homeland Security. He testified that, on September 16, 2024, he had received information from a fellow officer that Gray had driven a vehicle to the 5300 block of Holland Drive, and that a warrant was attached to the vehicle that Gray was driving. According to Officer Jennings, while in plainclothes and in an unmarked police vehicle, he waited outside the location that Gray had parked with the intention of following Gray. Officer Jennings provided no testimony as to why he was following Gray that day or why Gray was under investigation by the Crime Gun Intelligence Unit.

{¶17} Officer Jennings testified that the radio report he received about Gray may have mentioned that Gray wore a satchel across his chest, and that firearms were often stored in such bags. Officer Jennings further testified that he followed Gray's vehicle, but that Officer Carver initiated the traffic stop.

{¶18} LaQuieta Reese was the third witness who testified at the suppression hearing. She stated that she was the owner of the vehicle that Gray had been driving on September 16, 2024. She testified that she never gave officers permission to search the vehicle, and that she was permitted to drive the vehicle home after the search.

{¶19} The trial court issued an "Entry Granting in Part and Denying in Part Defendant's Motion to Suppress." It found that the officer's positive flag of Gray's warrant provided reasonable suspicion to stop the vehicle, and it denied Gray's motion

7

to suppress the stop itself.

{¶20} But the trial court reached the opposite conclusion with respect to the search of the vehicle. It found that because Gray had been immediately removed from the vehicle and handcuffed, and because he was not within reaching distance of the vehicle, the vehicle could not have been searched incident to arrest. The trial court also found that Gray's admission to the presence of burnt marijuana in the vehicle did not justify the search. The court cited several provisions in the newly enacted R.C. Ch. 3780 that authorized adults to transport cannabis in certain amounts, prohibited an individual from operating a vehicle under the influence of cannabis, and prohibited an individual from smoking a cannabis product while in a vehicle. The court then stated, "There was no evidence presented to suggest that the Defendant was under the influence of cannabis at the time of the arrest, and no evidence to show that the cannabis was being smoked inside the vehicle." The court held that the warrantless search of the vehicle was unconstitutional, and it granted Gray's motion to suppress the evidence seized during that search.

{¶21} The State now appeals, arguing in a single assignment of error that the trial court erred in granting Gray's motion to suppress.

## II. Jurisdiction to Hear this Appeal

{¶22} Before turning to the merits of the State's argument, we must briefly address a jurisdictional argument raised by Gray. Gray contends that we are without jurisdiction to consider this appeal because the State did not timely file a Crim.R. 12(K) certification with the clerk of the trial court. Gray raised this same argument in a motion to dismiss the State's appeal. We issued an entry denying Gray's motion to dismiss. We explained that the State's Crim.R. 12(K) certification was docketed in the Court of Appeals, despite being captioned in the trial court, and we ordered the clerk

to docket the certification in the trial court as if it were filed on February 26, 2025. The clerk complied, and the certification has now been filed in the trial court. The jurisdictional argument raised by Gray has therefore already been resolved, and this court has jurisdiction to consider the State's appeal.

### III. Motion to Suppress

{¶23} The State argues in its sole assignment of error that the trial court erred in granting Gray's motion to suppress.

{¶24} Our review of a trial court's ruling on a motion to suppress "presents a mixed question of law and fact." *State v. Wright*, 2022-Ohio-2161, ¶ 11 (1st Dist.); *accord State v. Hale*, 2024-Ohio-4866, ¶ 12. We must accept the trial court's findings of fact as true if competent, credible evidence supports them. *Wright* at ¶ 11; *Hale* at ¶ 12. But we review questions of law de novo, without deference to the trial court's legal conclusions. *Wright* at ¶ 11; *Hale* at ¶ 12.

### A. Search Incident to Arrest

{¶25} The State first argues that the trial court erred in determining that the search of the vehicle was not justified as a search incident to arrest.

{¶26} Unreasonable searches and seizures are prohibited by the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution. *State v. Dunlap*, 2024-Ohio-4821, ¶ 15 (plurality opinion); *State v. Whitfield*, 2020-Ohio-2929, ¶ 10 (1st Dist.). Absent an exception, a warrantless search is per se unreasonable. *Whitfield* at ¶ 10. It is the State's burden to establish an exception to justify a warrantless search. *See State v. Curry*, 2025-Ohio-2083, ¶ 41 (1st Dist.); *see also State v. Watts*, 2024-Ohio-635, ¶ 5 (1st Dist.) (holding that once the defendant establishes the lack of a warrant and the grounds upon which the warrantless search is being is challenged, the State has the burden of proof to justify

the warrantless search).

**{¶27}** One exception to the warrant requirement is a search that is conducted incident to a lawful arrest. *See Arizona v. Gant*, 556 U.S. 332, 338 (2009); *State v. Grayson*, 2023-Ohio-4275, ¶ 14 (1st Dist.). In *Gant*, the Court held that police are authorized "to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Gant* at 343. The Court further held that "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id.*, quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in judgment).

**{¶28}** The State relies on *Grayson* to argue that the trial court erred in determining that the search in this case was not a valid search incident to arrest. In *Grayson*, a Delhi Township police officer executed a traffic stop of a vehicle in which Grayson was the front-seat passenger after noticing that the vehicle had only one functioning headlight and "darkly-tinted windows." *Grayson* at ¶ 2. After obtaining identification from the driver and Grayson, the officer discovered that Grayson had an open traffic capias in another jurisdiction. *Id.* at ¶ 3. Grayson was removed from the vehicle and subject to a pat-down search. Based on Delhi police policy of arresting any individual with an open warrant, the officer placed Grayson in the back of his police cruiser. *Id.* at ¶ 4. He then searched Grayson's wallet and found a small paper bindle containing what was later determined to be a fentanyl-related compound. *Id.* Grayson was charged with a drug offense and filed a motion to suppress, which the trial court denied. *Id.* at ¶ 6.

**{¶29}** On appeal, Grayson challenged the denial of his motion to suppress. He

argued that the search of his wallet was not permissible as a search incident to arrest. *Id*. at ¶ 13. We found Grayson's argument to be without merit and held that the officer was entitled to conduct a search of Grayson's person even though he was unsure if Grayson would be arrested or re-cited on the outstanding warrant. *Id.* at ¶ 14. We explained,

> Because at the time of the search, [the officer] admitted that he was unsure if he would proceed by arresting or reciting Mr. Grayson on the outstanding warrant, Mr. Grayson seizes on this uncertainty to challenge the validity of the search. But a search incident to arrest may precede the formal arrest so long as probable cause for arrest existed at the time of the search and the search was contemporaneous with the arrest. Here, the outstanding warrant provided a basis for the arrest, so even assuming Mr. Grayson was not arrested until after the challenged search, probable cause for the arrest existed prior to the search. Therefore, the search constituted a valid search incident to arrest.

(Cleaned up.) *Id.*

{¶30} Both *Grayson* and the case before us involve an officer who, at the time that the challenged search was executed, was undecided as to whether the defendant would be arrested or re-cited on an outstanding warrant. But *Grayson* is otherwise factually distinguishable. That case involved a search of the offender's person, rather than a vehicle. The search incident to arrest exception to the warrant requirement derives from officer safety and evidence preservation interests. *See Gant*, 556 U.S. at 338. Thus, it makes sense to find reasonable a search of an individual that precedes their formal arrest so long as probable cause for the arrest existed at the time of the search and the search was substantially contemporaneous with the arrest.

**{¶31}** But it is the search of a vehicle that is being challenged in the case at bar. Under *Gant*, the automatic warrantless search of a vehicle *incident to arrest* is only justified under two circumstances: (1) when officers have a reasonable belief that evidence related to the *crime of arrest* will be found in the vehicle, or (2) "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id.* at 343. The safety and evidentiary concerns typically at issue during a search incident to an arrest are not present if neither of these circumstances exists. *Id* at 348-351.[1]

**{¶32}** For purposes of our analysis, we assume without deciding that Gray was under arrest at the time that officers searched the vehicle he had been driving. At the time of the search, Gray was secured in the back of Officer Carver's police cruiser. He was not within reaching distance of the vehicle. Further, at that point, Gray's arrest was solely based on the misdemeanor warrant issued by the City of Lockland, which was seemingly for a traffic capias. The record contains no evidence that the officers had a reasonable belief that evidence related to the crime of arrest would be found in the searched vehicle. *See id.* at 343.

**{¶33}** Under these circumstances, the trial court properly determined that the search of the vehicle was not a valid search incident to arrest.

### B. Search to Ensure Officer Safety before Gray Reentered Vehicle

**{¶34}** The State additionally argues in its reply brief that because there was a possibility that Gray would be reentering the vehicle at the conclusion of the traffic stop, the officers were justified in searching it before allowing Gray to reenter. In

---

[1] *Gant* only concerns the rule automatically allowing a search of a vehicle when the driver or occupant is arrested. "Other established exceptions to the warrant requirement authorize a vehicle search under additional circumstances when safety or evidentiary concerns demand." *Gant*, 556 U.S. at 346.

support of this argument, the State relies on *Michigan v. Long*, 463 U.S. 1032 (1983), and several cases from this court, including *State v. Jones*, 2014-Ohio-1201 (1st Dist.), and *State v. Smith*, 2013-Ohio-2208 (1st Dist.). It argues that the law set forth in these cases, and not *Gant*, governs our analysis.

**{¶35}** The State did not argue to the trial court, either in its written response to Gray's motion to suppress or at the suppression hearing, that the search was permissible under *Long*, *Smith*, and *Jones*. "A first principle of appellate jurisdiction is that a party ordinarily may not present an argument on appeal that it failed to raise below." *State v. Wintermeyer*, 2019-Ohio-5156, ¶ 10. Where an argument is not raised below, it is waived. *See State v. Smith*, 2019-Ohio-5350, ¶ 15 (1st Dist.) (holding that where appellant "did not present [an] argument to the trial court below, he waived his right to raise it for the first time on appeal").

**{¶36}** Further, not only did the State waive this argument by failing to raise it below, but it raised the argument for the first time in its reply brief. As such, it need not be considered. *See State v. Pitts*, 2022-Ohio-4172, ¶ 14 (1st Dist.) ("Pitts may not raise an argument for the first time in his reply and we need not consider this argument."); *Cincinnati v. Triton Servs., Inc.*, 2022-Ohio-3832, ¶ 23 (1st Dist.) (holding that the court need not consider an argument that was raised for the first time in a reply brief where the argument could have been raised before the trial court and in the primary appellate brief).

**{¶37}** Even if the State had preserved this argument for our review, it is ultimately without merit. In *Long*, the Court held that the passenger compartment of an automobile, specifically the areas of that compartment in which a weapon may be placed or hidden, may be searched "if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational

13

inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." (Cleaned up.) *Long*, 463 U.S. at 1049. *Long* recognized that one situation in which such a search may be justified is where an offender will be permitted to reenter his car following a traffic stop. *Id.* at 1051 ("In this case, the officers did not act unreasonably in taking preventive measures to ensure that there were no other weapons within Long's immediate grasp before permitting him to reenter his automobile.").

{¶38} This court followed *Long* in *Smith* and *Jones*. *See Smith*, 2013-Ohio-2208, at ¶ 17 (1st Dist.) ("This court has long held that if vehicle occupants would be permitted to return to the vehicle, an officer acts reasonably when, out of a concern for his safety, the vehicle is searched for weapons prior to allowing its occupants to reenter."); *Jones*, 2014-Ohio-1201, at ¶ 19 (1st Dist.) (same).

{¶39} The fallacy in the State's argument under *Long*, *Smith*, and *Jones* is that, at the time that the search was conducted, Officer Carver *had not yet determined* whether Gray would be returning to the vehicle. The record establishes that Officer Carver was on the phone with Lockland verifying the warrant for Gray while other officers searched the vehicle. Officer Carver's BWC footage depicts her telling Gray that he would be "sen[t] on [his] way" after she checked on the re-cite and that he "may be going back in the vehicle" after she figured out what was going on.

{¶40} A vehicle search for officer safety under *Long* is only justified when it has been determined that the detained individual will be returning to the vehicle. In *State v. Brown*, 2024-Ohio-5546, ¶ 18-27 (12th Dist.), the Twelfth District considered whether a search executed under similar circumstances was authorized under *Long*. The court determined that it was not, explaining,

[T]he evidence is uncontroverted that at the time [the officer] searched

appellant's vehicle and discovered the first firearm, the domestic dispute remained under investigation and no decision had been made as to whether appellant would be permitted to return to his vehicle. Appellant remained secured in the back of [a police] cruiser, unable to access his vehicle or gain immediate control of any weapons therein. As such, the exception recognized in *Michigan v. Long*, supra, was not applicable.

*Id.* at ¶ 27; *accord State v. Perkins*, 145 Ohio App.3d 583, 587 (2d Dist. 2001) ("there is no justification in permitting warrantless searches where it has not been determined that a detainee may return to a vehicle"); *State v. Parrish*, 2002-Ohio-3275, ¶ 26 (10th Dist.) (holding that "until a police officer has finally decided to return the individual to the vehicle, safety reasons cannot be used to justify the search" under *Long*).

**{¶41}** Because no decision had been made as to whether Gray would be permitted to reenter the vehicle at the time that the search was conducted, the exception recognized in *Long* does not support the warrantless search in this case.

### C. Odor of Marijuana/Automobile Exception to the Warrant Requirement

**{¶42}** The State next argues that pursuant to Ohio Supreme Court precedent, the smell of marijuana alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle under the automobile exception to the warrant requirement.

**{¶43}** The trial court found the State's argument to be without merit, determining that the smell of marijuana alone in this case did not justify the search under the automobile exception to the warrant requirement. The court explained that Ohio law now authorizes adults to use, possess, or transport cannabis in a specified

15

amount. It recognized that individuals cannot operate a vehicle while under the influence of a cannabis product or smoke a cannabis product while in a vehicle, but found that "[t]here was no evidence presented to suggest that the Defendant was under the influence of cannabis at the time of the arrest, and no evidence to show that the cannabis was being smoked inside the vehicle."

**{¶44}** Under the automobile exception to the warrant requirement, officers "may conduct a warrantless search of a lawfully stopped vehicle if they have probable cause to believe that the vehicle contains contraband." *State v. Mitchell*, 2022-Ohio-2564, ¶ 13 (1st Dist.). Probable cause will be found where "a reasonably prudent person would believe that a fair probability exists that the place to be searched contains evidence of a crime." *State v. Lang*, 2023-Ohio-2026, ¶ 12 (1st Dist.).

**{¶45}** Historically, the law in Ohio has been that "'the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle, pursuant to the automobile exception to the warrant requirement.'" *State v. Vega*, 2018-Ohio-4002, ¶ 15, quoting *State v. Moore*, 2000-Ohio-10, ¶ 1. The *Moore* Court reasoned that the distinctive odor of marijuana provided reasonable grounds for an officer to conclude that one was guilty of drug-related criminal offenses. *Moore* at ¶ 14. The State argues that the search of the vehicle that Gray was driving was authorized under *Moore* and *Vega* based on the odor of marijuana detected by Officer Carver.

**{¶46}** At the time that *Moore* and *Vega* were decided, the possession and use of marijuana was criminalized in Ohio. But, effective December 7, 2023, the Ohio legislature legalized the use of marijuana in certain circumstances. *See* R.C. 3780.36; *State v. Duch,* 2025-Ohio-1162, ¶ 27 (5th Dist.). Pursuant to R.C. 3780.36(A), an adult may use, possess, transfer, transport, and purchase adult-use cannabis. Subdivision

(B) of the statute limits the amount of cannabis and cannabis extract that an adult may possess, transfer, or transport to an amount not exceeding two-and-one-half ounces of cannabis or 15 grams of cannabis extract. R.C. 3780.36(B).

{¶47} Under the new statutory regime, several marijuana-related activities are still prohibited. As relevant to this appeal, R.C. 3780.36(D) sets forth restrictions on the use of marijuana in motor vehicles. It provides,

> (1) An individual is prohibited from operating a vehicle, motor vehicle, streetcar, trackless trolley, bike, watercraft, or aircraft while using adult use cannabis or while under the influence of adult use cannabis and is subject to section 4511.19 of the Revised Code for any violation of this division.

> (2) An individual is prohibited from smoking, vaporizing, or using any other combustible adult use cannabis product while in a vehicle, motor vehicle, streetcar, trackless trolley, bike, watercraft, or aircraft and is subject to section 4511.19 of the Revised Code for any violation of this division.

R.C. 3780.36(D)(1) and (2).

{¶48} Neither this court nor the Ohio Supreme Court have considered whether, in light of Ohio's new legal landscape authorizing the possession and use of marijuana, the search of a vehicle under the automobile exception to the warrant requirement remains permissible based on the smell of marijuana alone. In other words, it has yet to be determined whether *Moore* and *Vega* remain good law.

{¶49} Some guidance can be found in *Duch*, 2025-Ohio-1162 (5th Dist.), where the court considered whether the smell of marijuana, observed after a traffic stop, supported an officer asking the driver of the vehicle to perform field-sobriety

17

tests. The officer smelled an odor of both raw and burnt marijuana as he approached the vehicle at approximately 2:37 a.m. *Id*. at ¶ 2-3. The driver admitted that he had marijuana in the car and told the officer that he had smoked marijuana in the car at around 9:00 a.m. the previous morning. *Id*. at ¶ 5. The officer informed the driver that "even though marijuana was now legal in Ohio, it is still illegal to smoke in the car." *Id*. at ¶ 5. The officer had the driver perform field-sobriety tests and subsequently arrested him for driving while under the influence of alcohol or drugs. *Id*. at ¶ 6.

**{¶50}** The defendant filed a motion to suppress, arguing in relevant part that the officer lacked reasonable suspicion to expand the scope of the traffic stop into an OVI investigation. *Id*. at ¶ 7. The trial court granted the motion to suppress, noting that the recent change in Ohio law would make it harder to assess the reasonableness of an OVI investigation where the stop was based on the odor of marijuana and there were no signs of impaired driving. *Id*. at ¶ 8.

**{¶51}** The State appealed. In considering whether there was reasonable suspicion to expand the scope of the traffic stop, the Fifth District stated,

> We see no reason why the odor of burnt marijuana should not be subject to the same analysis as the odor of alcohol. *State v. Gray*, 2024-Ohio-347, ¶ 20 (5th Dist.). However, we wish to emphasize that on December 7, 2023, the use of recreational marijuana became legal in Ohio. *See, e.g.,* R.C. 3780.29 (Home Grow); R.C. 3780.36 (Limitations on Conduct by Individuals). Therefore, the odor of burnt or raw marijuana alone, *would not be sufficient* to provide a reasonable suspicion to expand the scope of the initial traffic stop in order to conduct field sobriety tests.

(Emphasis added.) *Id*. at ¶ 27. The court ultimately reversed the trial court's granting

18

of the motion to suppress, noting that the totality of the circumstances, including the officer's detection of the odor of marijuana and observation that the defendant had red, bloodshot eyes, as well as the defendant's admission that he had smoked marijuana in the vehicle earlier in the day, provided reasonable suspicion to conduct the field-sobriety tests. *Id.* at ¶ 28.

**{¶52}** As the Supreme Court of Ohio has not yet spoken on this issue, it is helpful to examine whether other states that have either legalized or decriminalized the use of marijuana have found probable cause to search an automobile exists based on the smell of marijuana alone.

**{¶53}** In *People v. Armstrong*, the Michigan Supreme Court considered whether the "enactment of the Michigan Regulation and Taxation of Marihuana Act (MRTMA)" superseded the longstanding law of Michigan, issued by the Court in *People v. Kazmierczak*, 461 Mich. 411, 413 (2000), that "'the smell of marijuana alone by a person qualified to know the odor may establish probable cause to search a motor vehicle, pursuant to the motor vehicle exception to the warrant requirement.'" *People v. Armstrong*, 2025 Mich. LEXIS 583, *9 (Apr. 2, 2025), quoting *Kazmierczak* at 413.

**{¶54}** The court explained that when *Kazmierczak* was issued, the possession, use, and transport of marijuana was criminalized under Michigan law. *Id.* at * 17. But in 2018, Michigan decriminalized the use and possession of marijuana in the MRTMA. *Id.* at *19-20. The MRTMA contains provisions similar to those in R.C. Ch. 3780. As described by the court, the MRTMA allowed adults to possess, use, purchase, transport, or process 2.5 to 15 grams of marijuana. *Id.* at *19-20. But it prohibited operating a vehicle while under the influence of marijuana, consuming marijuana while being in physical control of a motor vehicle, and smoking marijuana in the passenger area of a vehicle upon a public way. *Id.* at *20.

**{¶55}** The *Armstrong* court held that, after enactment of the MRTMA, "now that marijuana possession and use is generally legal, the odor of marijuana does not on its own supply a *substantial* basis for inferring a fair probability that contraband or evidence of illegal activity will be found in a particular place." (Emphasis in original.) *Id.* at *21. It explained that "the smell of marijuana might just as likely indicate that the person is in possession of a legal amount of marijuana, recently used marijuana legally, or was simply in the presence of someone else who used marijuana." *Id.*

**{¶56}** But the court held that, while the smell of marijuana alone did not provide probable cause to search a vehicle, it remained a relevant factor under the totality of the circumstances in a probable-cause analysis. *Armstrong*, 2025 Mich. LEXIS 583, at *22-23. The court stated, "although the smell of marijuana is no longer sufficiently indicative of the presence of contraband or illegal activity, that does not mean that the smell of marijuana is irrelevant to developing probable cause concerning illegal activity." *Id.* at *22.

**{¶57}** Colorado reached a similar conclusion in *People v. Zuniga*, 2016 CO 52. In *Zuniga*, the Colorado Supreme Court considered "the role that the odor of marijuana can play in the totality of the circumstances test in light of the fact that possession of one ounce or less of marijuana is now allowed under Colorado law." *Id.* at ¶ 17. The court explained that, pursuant to a 2012 amendment to Colorado's Constitution, "marijuana use, possession, and growth are lawful under Colorado law in certain circumstances." *Id.* at ¶ 18, citing Colo. Const., art. XVIII, § 16, cl. 3. While the amendment legalized the possession of a certain amount of marijuana, it remained unlawful for a person to possess more than the authorized amount or "for those other than licensed marijuana facilities to knowingly possess marijuana or marijuana concentrate with the intent to sell or distribute it." *Id.*

**{¶58}** The court recognized that while the amendment "allows possession of one ounce or less of marijuana, a substantial number of other marijuana-related activities remain unlawful under Colorado law," and consequently that "the odor of marijuana is still suggestive of criminal activity." *Id.* at ¶ 23. It ultimately held that "the odor of marijuana can properly be considered as part of the totality of the circumstances test for probable cause." *Id.* at ¶ 24.

**{¶59}** *People v. Redmond*, 2024 IL 129201, is also instructive. In *Redmond*, the Supreme Court of Illinois considered the impact of the odor of marijuana on a probable-cause analysis in light of the change in Illinois law, enacted under the Cannabis Regulation and Tax Act, legalizing the possession, use, and transport of a specified amount of cannabis flower, cannabis infused products, and cannabis concentrate by individuals twenty-one years of age or older. *Id.* at ¶ 41 and 45.

**{¶60}** Recognizing that Illinois law now allowed for "a myriad of situations where cannabis can be used and possessed, and [that] the smell resulting from that legal use and possession is not indicative of the commission of a criminal offense" (cleaned up), *id.* at ¶ 47, the court held that "the smell of burnt cannabis, standing alone, [is] insufficient to provide probable cause for a police officer to search a vehicle without a warrant." *Id.* at ¶ 46. But the court further held that the smell of burnt cannabis remained a fact "that should be considered when determining whether police have probable cause to search a vehicle." *Id.* at ¶ 54.

**{¶61}** We agree with the reasoning of the courts as set forth in *Armstrong* and *Redmond* and hold that the smell of marijuana, standing alone, is no longer sufficient to establish probable cause to search a motor vehicle under the automobile exception to the warrant requirement. Based on the recent changes to Ohio law under R.C. Ch. 3780, the smell of marijuana is no longer automatically indicative of criminal activity,

21

as it was at the time that *Moore* and *Vega* were decided. An officer cannot determine, based solely on the odor of marijuana, whether a detainee possesses a legal amount of marijuana or an amount that exceeds what is authorized by statute. It is just as likely that the odor of marijuana is indicative of legal activities as it is indicative of illegal ones.

{¶62} That being said, as recognized in *Armstrong*, *Zuniga*, *Redmond*, and *Duch*, we hold that the odor of marijuana remains a relevant factor under the totality of the circumstances in a probable-cause analysis. If the smell of marijuana was coupled with another factor or factors, such as smoke emanating from the vehicle, impaired driving, or other signs of impairment, it is more likely that an officer would have probable cause to search a vehicle under the automobile exception to the warrant requirement.

{¶63} Here, however, the record contains no additional evidence that would support a finding of probable cause under the totality of the circumstances. The record contains no evidence that Gray exhibited any other signs of impairment, such as bloodshot eyes, slurred speech, or impaired movement or driving. Nor does it contain any other evidence, such as smoke emanating from the vehicle, that would cause the officers to believe that Gray had operated the vehicle under the influence or smoked marijuana while operating the vehicle, actions which remain illegal under R.C. Ch. 3780. While Officer Carver testified that Gray admitted to having a "cotty" in the vehicle and that she smelled marijuana, it was not illegal under R.C. 3780.36 for Gray to possess the marijuana blunt in the vehicle. The record contains no evidence that the amount of marijuana that Gray admitted to possessing exceeded the permissible amount under R.C. 3780.36(B).

{¶64} We accordingly hold that the officers lacked probable cause to search

the vehicle under the automobile exception to the warrant requirement, and that the trial court did not err in determining that this exception did not support the warrantless search of the vehicle.

### IV. Good-Faith Exception

**{¶65}** The State argues—for the first time on appeal—that even if the search of the automobile was not permitted based on the smell of marijuana alone, the search should still be upheld because the officers acted in good faith. It contends that "[p]olice are not expected to anticipate shifts in the law, or to interpret conflicting precedent," and that, at the time of the search, no court had determined that *Moore* and *Vega* no longer contained good law and the officers acted in good faith in relying on the law set forth in those cases.

**{¶66}** But because the State failed to raise this argument below, at a time when the trial court had the opportunity to consider whether the officers acted in good faith, the argument has been waived. *See State v. Johnson*, 2024-Ohio-1147, ¶ 22 (1st Dist.) ("Nonetheless, we need not consider whether this exception to the exclusionary rule, known as the good faith exception, applies here because the state never raised it at the trial level or on appeal, and the trial court likewise did not address it.").

### V. Conclusion

**{¶67}** The trial court did not err in granting Gray's motion to suppress the contraband recovered during the search of the vehicle he was driving. The State's assignment of error is accordingly overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

**KINSLEY, P.J.,** and **BOCK, J.,** concur.